GORDON SILVER
MICHAEL V. CRISTALLI
Nevada Bar No. 6266
Email: mcristalli@gordonsilver.com
VINCENT SAVARESE, III
Nevada Bar No. 2467
Email: vsavarese@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Tel: (702) 796-5555
Fax: (702) 369-2666
Attorneys for Claimant, Straughn Samuel Gorman

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:13-cv-00324-LRHVPC |
| Plaintiff, | |
| vs. | |
| 167,070.00 IN UNITED STATES CURRENCY, | |
| Defendant, | |
| and | |
| STRAUGHN SAMUEL GORMAN, | |
| Claimant. | |

**CLAIMANT STRAUGHN GORMAN'S OPPOSITION TO**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COME NOW, Claimant Straughn Gorman ("Mr. Gorman") by and through counsel, Michael V. Cristalli, Esq., and Vincent Savarese, Esq., of the law firm of Gordon Silver, and hereby files Mr. Gorman's Opposition to Plaintiff's Motion for Summary Judgment and request for relief pursuant to Fed. R. Civ. P. 56(d).

///

///

///

///

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

1 of 21

1    This Objection is made and based upon all files, pleadings, and records on file herein,

2    together with the Points and Authorities attached hereto.

3    Dated this 11th day of March, 2014.

4                                    GORDON SILVER

5

6                                    MICHAEL V. CRISTALLI
                                     Nevada Bar No. 6266
7                                    VINCENT SAVARESE, III
                                     Nevada Bar No. 2467
8                                    3960 Howard Hughes Pkwy., 9th Floor
                                     Las Vegas, Nevada 89169
9                                    (702) 796-5555
                                     Attorneys for Claimant, Straughn Samuel
10                                   Gorman

11                                        **I.**

12                                  **INTRODUCTION**

13    As the Plaintiff United States of America ("the Government") is aware, Mr. Gorman is

14   filing a motion to suppress. In the interim, the Government seeks to have its claims summarily

15   adjudicated. While the Government sets forth a statement of facts based on Deputy Fisher's

16   declaration, it wholly ignores that the statement of facts contradicts previously sworn statements

17   of Deputy Fisher and the video recorded events surrounding the stop of the vehicle driven by Mr.

18   Gorman. Thus, there are disputed issues of material fact such that summary judgment is

19   inappropriate. Each of these issues of material fact goes to whether the *res* was illegally seized.

20    As the motion to suppress will further determine whether certain evidence is even

21   admissible, it goes directly to summary judgment. Without knowing whether certain evidence is

22   admissible, given the motion to suppress, Mr. Gorman is unable to respond to the motion for

23   summary judgment, such that the motion must be continued pursuant to Fed. R. Civ. P. 56(d).

24    Furthermore, because Mr. Gorman has the right to challenge the seizure prior to

25   addressing the merits of the forfeiture action, it is improper to impose a penalty for his

26   invocation of the Fifth Amendment. Yet, the Government seeks to punish Mr. Gorman for

27   choosing to pursue a remedy under the Fourth Amendment, while maintaining his Fifth

28   Amendment right in the interim. If his motion to suppress is successful, the issue is likely moot.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

1   If it is not successful then Mr. Gorman must have the opportunity to withdraw his invocation. As

2   litigation is in its initial phases, no prejudice would inure to the Government if he chose to do so.

3   **II.**

4   **CLAIMANTS STATEMENT OF FACTS**

5   **A.    DEPUTY FISHER'S INITIAL AND CONTEMPORANEOUS STATEMENTS OF EVENTS DEMONSTRATES THAT SUMMARY JUDGMENT IS INAPPROPRIATE.**

6

7   On January 23, 2013, at approximately 10:20 a.m. Deputy Fisher reportedly observed a

8   white motor home driven by Gorman traveling West Bound on Interstate 50. (*See* January 23,

9   2013, Telephonic Application for a Search Warrant, attached hereto as **Exhibit A**, at p.4:3-17).

10  Deputy Fisher's position on Interstate 50 at the time he was observing the white motor home is

11  uncertain.

12  A mere 40 minutes after the stop, Deputy Fisher provided a sworn statement to Elko

13  County Justice Court Judge Boatman. Deputy Fisher explained that he "noticed the vehicle drift

14  to the right and **drive on the white fog line**." (*Id.* at p.4:11-13). As a secondary concern he

15  "noticed the driver had the **curtain pulled forward** on the driver's side window which obstructs

16  the driver's view of the vehicle's **left blind area** . . . ." (*Id.* at p.4:13-16)(emphasis added). And

17  although Deputy Fisher claims that the (factory-installed) curtain in question was "pulled

18  forward" to some extent, he does not claim by any means that the curtain was *closed* or that Mr.

19  Gorman did not otherwise have a normal view through the window of anything that would

20  otherwise be visible if the curtain were not pulled forward at all. Thus, Deputy Fisher asserts

21  only that his observation indicated that "the driver's view of the vehicle's **left *blind area***" may

22  have been compromised – an area which, *by definition*, is never "normally" visible to the

23  operator of a motor vehicle by *direct* view to begin with.

24  Deputy Fisher then made a specific point to tell the Court that "upon initial lighting of the

25  overhead lights, Deputy Fished followed the vehicle for approximately four miles before the

26  vehicle pulled over and noticed that he was following and trying to affect the traffic stop." (Id. at

27  p. 5:1-5). Deputy Fisher never mentioned any efforts he took to alert the driver to his presence,

28  including but not limited to pulling alongside the vehicle.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

3 of 21

1   Deputy Fisher proceeded to ask Mr. Gorman where he was coming from, where he was

2   going to, and whether he was gainfully employed. (Savarese Declaration, attached hereto as

3   **Exhibit B**, at ¶ 9). In response to Deputy Fisher's questions, Mr. Gorman advised the officer that

4   "he was travelling from Delaware to Sacramento, California." (Ex. A, at p. 5, ¶1). And,

5   according to Deputy Fisher's sworn search warrant application, Mr. Gorman purportedly

6   "indicated he had no job." (*Id.*). Deputy Fisher never referred to the driver's window covering

7   being closed.

8   According to Deputy Fisher, his initial contact with Mr. Gorman was "abrupt" because

9   Mr. Gorman purportedly became "difficult" in that he "did not want to answer any other

10  questions." [Dkt. 12 at p.3, ¶6]. To say nothing of a person's right to not answer questions.

11  Deputy Fisher thereupon returned to his patrol vehicle taking Mr. Gorman's driver's

12  license, vehicle registration, and proof of insurance with him.  Upon returning to the vehicle,

13  Deputy Fisher is seen filling out a "consent to search form." (Savarese Decl., Ex. B, at ¶14).

14  Deputy Fisher never prepared a citation.

15  Deputy Fisher then performs a canine search of the exterior of the motor home, after Mr.

16  Gorman declined to consent to a search of the motor home. (*Id.* at ¶15).

17  Despite no video evidence that Deputy Fisher performing a records check on Mr. Gorman

18  prior to conducting the canine search, he swore to the Court that he performed "an EPIC check"

19  on Gorman and "was informed [Gorman] had multiple border crossings with the most recent in

20  2012 from Madrid, Spain, into the United States. Secondly, it (sic) was informed the subject

21  transferred $11,000 cash to another subject with an unknown name." (Ex. A, at p.5:13-18).

22  Deputy Fisher explicitly swears that "**based upon this** he obtained a trained canine in the

23  detection of controlled substance to walk around the vehicle." (*Id.* at p. 5:19-21)(emphasis

24  added). So while he allegedly relied on the records check in determining to do a canine search,

25  the record reveals that Deputy Fisher did not do a records check prior to the canine search.

26  In careful detail, Deputy Fisher goes on to explain to the court his and the trained

27  canine's ability to detect the odor of illegal substances. (*Id.* at p.5:21-6:18). Deputy Fisher stated

28  that upon searching around the vehicle, the canine "alerted to the right rear fender and cargo area

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

4 of 21

1    . . . ." (*Id.* at p.6:19-20). Based on Deputy Fisher's sworn statement, the Court granted Deputy

2    Fisher a telephonic search warrant at 11:02 p.m., 42 minutes after Deputy Fisher initially spotted

3    the motor home.

4            Pursuant to the search warrant, Deputy Fisher searched the interior of the motor home.

5    There were no drugs or paraphernalia found in the motor home. Deputy Fisher, however, located

6    and seized $167,070.00 in United State Currency.

7    **B.    DAYS AFTER THE SEIZURE, DEPUTY FISHER CHANGES HIS STORY TO
          THE FACTS ALLEGED BY THE GOVERNMENT, DEMONSTRATING THAT**
8    **QUESTIONS OF MATERIAL FACT EXIST.**

9            On January 25, 2013, at 4:36 p.m., Deputy Fisher created a report for the event. (*See*

10    Deputy Report for Case 13EL00100, attached hereto as **Exhibit C**). Undoubtedly, between the

11    time of the stop and the time of his report, Deputy Fisher had the opportunity to speak with his

12    superiors and the Elko County Attorney. The report differs in several material respects to the

13    contemporaneous sworn statement of Deputy Fisher.

14          **1.    Deputy Fisher changed his explanation for why he stopped the vehicle, creating
           a material question of fact as to whether probable cause exists.**

15

16            Immediately after effectuating the stop, Deputy Fisher swore to the Court that the reason

17    that he followed the motor home was because the motor home was seen driving on the white fog

18    line. (Ex. A, at p.4:11-13). The Government, however, relies upon Deputy Fisher's later version

19    of the facts in which he claims that started following Mr. Gorman because he observed "the

20    driver's side window curtain was pulled completely forward, which obstructed the driver's view

21    of his left side mirror and the left side blind area of the vehicle." (Ex. C, at p. 3).

22            Peculiarly, Deputy Fisher's written statement that "the driver's side window curtain was

23    pulled completely forward" is an amendment to Deputy Fisher's sworn statement to the Court

24    immediately after the stop in which Deputy Fisher merely said that he "noticed the driver had the

25    **curtain pulled forward** on the driver's side window . . . ." (*Id.* at p.4:13-16)(emphasis added).

26    By no means in his original statement did Deputy Fisher claim the curtain was *closed* or that Mr.

27    Gorman did not otherwise have a normal view through the window of anything that would

28    otherwise be visible if the curtain were not pulled forward at all.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

1    Furthermore, in the original application for telephonic search warrant, Deputy Fisher

2    takes special note to tell the Court that he turned on his overhead lights—not sirens—and

3    followed the motor home for four miles. (Ex. A at p. 5:1-5). He does not say that he did anything

4    to notify the driver of his presence, that he turned on the sirens or that he noticed the window

5    was closed. (*Id.* at p. 5:1-5).

6    Yet, in the second version of Deputy Fisher's testimony, which the Government relies

7    upon, Deputy Fisher testifies that the first time he saw Mr. Gorman cross onto the fog line was

8    after Deputy Fisher began following Mr. Gorman. (Ex. C, at p. 3). Deputy Fisher then lays out an

9    elaborate story about his attempting to get Mr. Gorman's attention, including pulling into the

10    motor homes blind spot and pulling right behind the motor home. (*Id.*). Deputy Fisher even says

11    that the curtain on the left side window was completely closed. (*Id.*). Not only were all of the

12    Deputy Fisher's purported actions omitted from his recording of the stop, but it is excluded from

13    his sworn statement to the Court, a highly unusual fact.

14    **2.  Deputy Fisher changes his story to explain why he detained Mr. Gorman for a
     prolonged period of time.**

15

16    After making the initial contact with Mr. Gorman, Deputy Fisher thereupon returned to

17    his patrol vehicle with Mr. Gorman's driver's license, vehicle registration, and proof of

18    insurance. At that time Deputy Fisher did not take any further investigative action but instead is

19    seen filling out a "consent to search form." (Savarese Decl., Ex. B, at ¶11). Deputy Fisher never

20    prepared a citation. Deputy Fisher never reports or testifies that he filled out the "consent to

21    search form."

22    Deputy Fisher swore to the Court immediately after the stop that he performed an EPIC

23    check and learned that Gorman had previously gone to Spain a year earlier. (Ex. A, at p.5:13-18).

24    Deputy Fisher then expressly told the Court that **only after** receiving the results of the EPIC

25    check did he use a canine to search the exterior of the vehicle. (*Id.* at 5:19-21).

26    Deputy Fisher later changed his story and claimed that dispatch was unavailable to "run a

27    records inquiry." (Ex. C, at p.3). The Government's summary judgment motion adopts Deputy's

28    conflicting report of events. Deputy Fisher and the Government further claim that Deputy Fisher

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949                                6 of 21

1   presumed that dispatch was unavailable because there was a medical call being dispatched. (*Id.*

2   at p.3). The video of the events demonstrates that Deputy Fisher made no efforts whatsoever to

3   call in Mr. Gorman's information, and instead opted to perform a canine search. (Savarese Decl.,

4   Ex. B, at ¶14).   Nevertheless, Deputy Fisher tells Gorman he was detained because Deputy

5   Fisher "had not run him through dispatch, they were busy and until [he] checked on [Gorman's]

6   information, [Gorman] was being detained." (*Id.* at p.3). Deputy Fisher did not report any delay

7   when he obtained a search warrant from the Court and instead swore that he had in fact

8   completed a records check prior to conducting a canine search.

9         Deputy Fisher and the Government then claim that Deputy Fisher asked Deputy Prall to

10   conduct a records inquiry with dispatch. (Id.). Deputy Fisher and the Government have never

11   verified that dispatch was busy and unable to do a records check.

12         Deputy Fisher then claims to have performed a canine search of the vehicle. (*Id.* at p.4).

13   Despite multiple "hits" from the canine, no drugs and no drug paraphernalia was discovered.

14   While money was found, Deputy Fisher does not claim that the canine positively alerted to the

15   money.

16                                       **III.**

17                              **LEGAL ARGUMENT**

18   **A.   SUMMARY JUDGMENT IS PREMATURE, AND DEFENDANT SHOULD BE
         GRANTED RELIEF PURSUANT TO FRCP 56(D), TO CONDUCT DISCOVERY**
19       **AND HAVE ITS MOTION TO SUPPRESS HEARD.**

20         "As the Ninth Circuit explained, [w]here a summary judgment motion is filed so early in

21   the litigation, before a party has had any realistic opportunity to pursue discovery relating to its

22   theory of the case, district courts should grant any Rule 56([d]) motion fairly freely." *Peshek v.*

23   *Litton Loan Servicing*, Slip Copy, 2011 WL 4479700, *5 (D.Nev., Sep. 27, 2011) (quoting

24   *Burlington Northern Santa Fe R.R. Co. v. The Assiniboine and Sioux Tribes of The Fort Peck*

25   *Reservation*, 323 F.3d 767, 773 (9th Cir.2003)). In fact, while " Rule 56([d]) facially gives

26   judges the discretion to disallow discovery when the non-moving party cannot yet submit

27   evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

7 of 21

than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'" *Peshek*, 2011 WL at *5, (citing *Burlington*, 323 F.3d at 773; *Anderson v. Liberty Lobby, Inc.*,477 U.S. 242, 250 (1986))

The Court may defer a motion for summary judgment or deny it, in order to complete additional discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Righthaven, LLC v. Hoehn*, 792 F.Supp.2d 1138, 1148 (D.Nev., 2011); Fed.R.Civ.P. 56(d). Specifically, "the party requesting additional time to conduct discovery to oppose summary judgment must present an affidavit stating the specific facts it hopes to elicit from further discovery, that the facts exist, and that the facts are essential to oppose summary judgment." *Righthaven*, 792 F.Supp.2d at 1148 (citing *Family Home & Fin. Ctr, Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir.2008)); *see also State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998). As discovery has just begun and Gorman has had virtually no opportunity to conduct discovery, the Court's ruling on the merits of the summary judgment motion must be stayed.

1. **Gorman must be afforded the opportunity to challenge the seizure of the money.**

As the Supreme Court has long since made abundantly clear in *One 1958 Plymouth Sedan v. Commonwealth Of Pennsylvania.*, 380 U.S. 693, 702 (1965): "the [quasi-criminal] nature of a forfeiture proceeding . . . and the reasons which led the Court to hold that the exclusionary rule . . . is obligatory upon the States support the conclusion that the [constitutional] exclusionary rule is applicable to forfeiture proceedings such as the one involved here."[1] Thus, as the United States Court of Appeals for the Ninth Circuit has repeatedly held: "The exclusionary rule applies in civil forfeiture cases. It bars the admission of evidence obtained in violation of the U.S. Constitution, as well as 'fruits of the poisonous tree.' Under the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible." *United States v. $493,850.00 in*

---

[1] In *Plymouth Sedan*, as in the case at bar, the real party in interest "sought dismissal of the forfeiture petition on the ground that the forfeiture . . . depended on the admission of evidence illegally obtained in violation of the Fourth Amendment to the Constitution as applied to the States by the Fourteenth Amendment." 380 U.S. at 694-95.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

*United States Currency,* 518 F.3d 1159, 1164 (9th Cir. 2008) ("Illegally seized property may not be introduced as evidence in a forfeiture proceeding" "courts may not introduce illegally seized currency into evidence or consider its amount [in forfeiture proceedings]") (finding that highway patrol officer "had made a lawful investigatory stop of the [claimant's] truck, but that he unlawfully exceeded the scope of the investigatory stop by . . . questioning him and searching and seizing the truck and currency [found therein]") (discussed *infra*).

As stated above, the Government cannot prevail in an action for forfeiture based on its reliance on inadmissible and illegally seized evidence. As argued in "Claimant Straughn Gorman's Motion to Suppress ("Motion to Suppress")," served concurrently herewith, the search conducted was conducted without probable cause and in violation of the Fourth Amendment. As a result, the evidence obtained from the search was illegally obtained. Necessarily that would include any circumstantial evidence found during the illegal search of the motor home. To grant summary judgment would deny Mr. Gorman of his right to challenge the search.

**2. Gorman cannot argue against summary judgment because the Court has not decided what is and what is not competent evidence.**

The Government must demonstrate that probable cause exists that the currency was intended to be used for prohibited purposes. The determination, like in any summary judgment motion, must be made based on competent evidence. "The determination of probable cause is based on the aggregate of facts, including circumstantial facts. *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002). The government must show that it had reasonable grounds to believe a connection existed between the property and drug activities, supported by more than mere suspicion but less than prima facie proof. *Id.* As stated in great detail above, illegally seized or obtained evidence cannot be used as competent evidence to form the basis of probable cause.

In support of its summary judgment motion, the Government submits the declaration of Deputy Fisher. Deputy Fisher's declaration is based upon his observations during the search that Mr. Gorman contends was illegal. If the search was illegal then certain evidence will be deemed inadmissible. As a result, Mr. Gorman's arguments will greatly differ.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

As it is impossible for Mr. Gorman to combat the motion for summary judgment prior to the decision on the motion to suppress relief pursuant to FRCP 56(d) is appropriate.

**3. Gorman must be entitled to conduct different discovery to resolve issues surrounding the stop.**

At issue are two separate reports of a single event by a single deputy, Deputy Fisher. While the Government relies on one of at least two divergent statement made by Deputy Fisher, there is no evidence substantiating one of Deputy Fisher's versions of events over any other. Thus far, Mr. Gorman has been deprived of any opportunity to conduct discovery. Without the following testimony, Mr. Gorman will be unable to challenge the validity of the search and subsequent seizure of the *res*.

The Court must allow Mr. Gorman the opportunity to explore the conflicting testimony of Deputy Fisher. Many if not all of the conflicting testimony of Deputy Fisher is material to the question of whether any evidence uncovered during the search is admissible.

Deputy Fisher provides two accounts of the traffic stop. One was made contemporaneously with the stop to the Court in an effort to obtain a search warrant. The second was made in the days following the stop. As described above, one such discrepancy in the reports is the purpose and reason for the stop. While the initial report states that Mr. Gorman's driving on the "fog-line" was justification for Deputy Fisher's investigation, later reports state that the window being completely closed was **the** justification for the investigation—with a closed window not even being mentioned in the initial report. As driving on a fog line has been determined by this very Court to not be a violation of Nev. Rev. St., it is suspicious that Deputy Fisher abandons his argument that driving on the line was justification for the stop days after initially reporting it as the reason for the stop. Mr. Gorman should be entitled to conduct discovery, including depositions of Deputy Fisher and Deputy Prall.

Additionally, a portion of the video recording made of the traffic stop is missing. From the time in which Deputy Fisher completes the exterior canine search until the time Deputy Fisher begins searching the motor home has not been produced. The recording is likely to reveal that Deputy Fisher did not conduct any identification check of Mr. Gorman prior to conducting a

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

1  canine search. This would directly conflict his sworn testimony and would go to establish that

2  Deputy Fisher misled the Court when obtaining a warrant, a relevant factor in determining

3  suppression. It would also suggest that the stop and prolonged seizure of Mr. Gorman was

4  unreasonable, as the officer unreasonably prolonged the stop so that he could conduct a canine

5  search.

6       Deputy Fisher also provides sworn testimony that dispatch was "busy," such that he was

7  unable to perform a records check. This argument lacks any reliability as the video recording that

8  has been disclosed in fact shows that Deputy Fisher never attempted to call dispatch. Instead, it

9  appears as if his first action was to seek Mr. Gorman's consent to search and then to perform an

10  external canine search. As described in the Motion to Suppress, such an action would violate Mr.

11  Gorman's due process rights. Mr. Gorman should therefore be allowed to conduct discovery into

12  Elko County Sheriff's dispatch capabilities, any requests made by Deputy Fisher or Deputy Prall,

13  and whether there had been an incident that prevented a records check for upwards of ten

14  minutes. Evidenced obtained would go to the reasonableness of the prolonged seizure of Gorman

15  and Deputy Fisher's credibility.

16       Gorman is also entitled to conduct discovery into Deputy Fisher and the canine's

17  proficiency in determining the presence of drugs. Thus far, aside from a self-serving affidavit,

18  there is no evidence that the canine search was reliability. And in fact, despite allegedly

19  "positive" responses, the motor home contained no controlled substances and no drug

20  paraphernalia suggesting that the canine is in fact not qualified to perform drug searches. The

21  canine also did not present a positive response to the currency, directly refuting the

22  Government's position that the currency was intended for the purchase of illegal substances.

23       As each of the above facts are relevant to suppression, and therefore whether probable

24  cause exists, summary judgment is inappropriate and the Court must grant Mr. Gorman leave to

25  conduct discovery.

26  **B.**      **SUMMARY JUDGMENT WOULD BE INAPPROPRIATE IN ANY CASE.**

27       "When the party moving for summary judgment would bear the burden of proof at trial, it

28  must come forward with evidence which would entitle it to a directed verdict if the evidence

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1985). The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir.2005). "The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that 'there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law.'" *May v. Williams*, Slip Copy, 2012 WL 1155390 (D.Nev., April 4, 2012) (quoting Fed.R.Civ.P. 56(a)); *see also Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007)(requiring that the nonmoving party identify the absence of material fact in the record). If the moving party fails to meet its initial burden, summary judgment **must be denied** and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). This Court has found that "**[a] material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth**." *White v. City of Sparks*, 341 F. Supp. 2d 1129, 1135 (D. Nev. 2004)(emphasis added).

"The trial court, must draw all reasonable inferences supported by the evidence in favor of the non-moving party." *Villiarimo*, 281 F.3d 1054, 1061 "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir.2004) (citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No.1936*, 680 F.2d 594, 598 (9th Cir.1982)). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*

1    *Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987).   The court must also view the evidence

2    through a prism of the controlling legal standard. *Nebraska v. Wyoming*, 507 U.S. 584, 590

3    (1993).

4        **1.   Mr. Gorman has standing to challenge the seizure of the money.**

5            As the Ninth Circuit explained in *United States v. Real Property Known As 22249*

6    *Dolorosa Street, Woodland Hills, California, supra,* 167 F.3d at 512 (9th Cir. 1999): "Standing is

7    a threshold issue . . . . To have standing to challenge a forfeiture, a claimant must allege that he

8    has an ownership or other interest in the forfeited property." Thus, a forfeiture action may be

9    challenged by "a claimant who is either the colorable owner of the res or who has any colorable

10   possessory interest in it." *United States v. United States Currency, $81,000.00,* 189 F.3d 28, 35

11   (1st Cir. 1999).     *Accord, e.g., United States v. 1998 BMW "I" Convertible Vin No.*

12   *WBABJ8324WEM20855,* 235 f.3D 397, 399 (8th Cir. 2000) ("To manifest standing in the

13   forfeiture context . . . . [a]n ownership interest is evidenced in a number of ways, including

14   showings of actual possession, [and] control"); *United States v. $515,060.42 in United States*

15   *Currency,* 152 F.3d 491, 497-98 (6th Cir. 1998) ("In order to contest a governmental forfeiture

16   action . . . . a claimant must have a colorable ownership, possessory or security interest in at least

17   a portion of the defendant property"); *United States v. One Parcel of Property Located at Tracts*

18   *10 and 11 of Lakeview Heights, Canyon Lake, Comal County, Texas,* 51 F.3d 117, 120-21 (8th

19   Cir. 1995) (for purposes of standing in the forfeiture context, "ownership of personal property

20   may be defined as having a possessory interest in the res, with its attendant characteristics of

21   dominion and control"); *United States v. Currency, 267, 961.07,* 916 F.2d 1104, 1107 (6th Cir.

22   1990) ("With respect to Article III standing, . . . [a] property interest less than ownership, such as

23   a possessory interest, is sufficient to create standing").

24           Mr. Gorman has duly complied with this statutory requirement in the case at bar. [Dkt.

25   7]. It is also undisputed that, at the time of its seizure by local police, Mr. Gorman was in

26   exclusive actual possession and control of the Defendant currency within the meaning of the

27   foregoing judicial authorities.

28   ///

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

13 of 21

1  Mr. Gorman was a regular, owner-authorized operator of the "Trail-Lite" motor home

2  owned by and duly registered in the name of his half-brother, Kyle William Hopkins, which was

3  stopped, held, and ultimately searched by local law enforcement officers on January 23, 2013;

4  and was then and there in exclusive, owner-authorized possession, dominion and control of that

5  vehicle. See *e.g.*, *United States v. Savides*, 655 F.Supp. 686 (N.D. Ill. 1987) (defendant, who was

6  the non-owner driver, had standing to challenge vehicle search because he had the owner's

7  permission to drive the car at the time of the search); *United States v. Miller*, 821 F. 2d 546 (11th

8  Cir. 1987) (driver who had permission to borrow car from friend had standing to challenge

9  search of vehicle); *United States v. Rose*, 731 F.2d 1337 (8th Cir. 1984) (defendant, who was a

10 passenger in car owned by his sister but driven at the time by another female, had standing to

11 contest search of vehicle where he had express permission of sister to use car, had keys to both

12 ignition and trunk, and often used the car); *United States v. Portillo*, 633 F.2d 1313 (9th Cir.

13 1980); *United States v. Lopez*, 474 F. Supp. 943 (C.D. Cal. 1979) (driver who had permission to

14 use the vehicle, possessed the car keys, and had historically used the vehicle had standing to

15 challenge search of automobile). See also *e.g.*, *Jones v. United States*, 362 U.S. 257 (1960) (a

16 guest with keys to his friend's apartment "had complete dominion and control over the apartment

17 and could exclude others from it" and therefore had standing to challenge a search of the

18 premises). *See generally, United States v. Salvucci*, 448 U.S. 83 (1980); *Rakas v. Illinois*, 439

19 U.S. 128 (1978).

20 Mr. Gorman also provided interrogatory responses that he was "the owner of the entirety

21 of the defendant currency and [he] therefore claim[s] the entire amount." [Dkt. 11 at 10:20-11:2].

22  **2. There are questions of material fact based upon Deputy Fisher's own testimony.**

23 The Government must demonstrate that probable cause exists that the currency was

24 intended to be used for prohibited purposes. The determination, like in any summary judgment

25 motion, must be made based on competent evidence. "The determination of probable cause is

26 based on the aggregate of facts, including circumstantial facts. *United States v. Currency, U.S.*

27 *$42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002). The government must show that it had reasonable

28 grounds to believe a connection existed between the property and drug activities, supported by

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

14 of 21

1   more than mere suspicion but less than prima facie proof. *Id.* As stated in great detail above,

2   illegally seized or obtained evidence cannot be used as competent evidence to form the basis of

3   probable cause.

4       In support of its summary judgment motion, the Government submits the declaration of

5   Deputy Fisher. Deputy Fisher's declaration is self-serving and ignores the contradictory sworn

6   statements that he made to the Court when seeking a telephonic search warrant. The differences

7   are relevant to whether Deputy Fisher had probable cause to effectuate a stop and further prolong

8   the search in order to perform a canine search. As the claimed truth is disputed by Deputy

9   Fisher's previously sworn testimony, it is impossible for the Court to conclude on summary

10   judgment that Deputy Fisher's later "changed" testimony resolves any question of material fact

11   such that summary judgment must be denied.

12       **3.   Mr. Gorman's invocation of the Fifth Amendment does not resolve any question of
   fact.**

13       a.   Mr. Gorman's invocation was proper such that no inference can be drawn.

14       When determining whether the Fifth Amendment is properly invoked, the Court must

15   give due regard to the policy considerations that underlie the Fifth Amendment guarantees,

16   including the protection of the innocent from unwarranted conviction. *United States v.*

17   *Whittington*, 786 F.2d 644, 646 (5th Cir. 1986). The United State Supreme Court has never held

18   "that the privilege is unavailable to those who claim innocence. *Ohio v. Reiner*, 532 U.S. 17,

19   21(2001). To the contrary, the Supreme Court emphasizes that one of the Fifth Amendment's

20   "**basic functions ... is to protect *innocent* men ... 'who otherwise might be ensnared by**

21   **ambiguous circumstances.**' " *Id.* (citing *Grunewald v. United States*, 353 U.S. 391, 421

22   (1957))(emphasis added). In *Grunewald,* the Court recognized that "truthful responses of an

23   innocent witness, as well as those of a wrongdoer, may provide the government with

24   incriminating evidence from the speaker's own mouth." 353 U.S. at 421–422.

25       The Supreme Court has stated that the Fifth Amendment "guarantees ... the right of a

26   person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and

27   to suffer no *penalty* ... for such silence." *Spevack v. Klein,* 385 U.S. 511, 514(1967). The concept

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

1  of "penalty" includes "the imposition of any sanction which makes assertion of the Fifth

2  Amendment privilege 'costly.'" *Id.* at 515.

3      The Fifth Amendment privilege "protects against any disclosures which the witness

4  reasonably believes *could be used* in a criminal prosecution...." *Kastigar v. United States*, 406

5  U.S. 441, 444-45 (1972); *Ohio v. Reiner,* 532 U.S. 17 (2001) (witness could assert Fifth

6  Amendment privilege despite claim of innocence because she had reasonable cause to apprehend

7  danger from her answers). "The Fifth Amendment's protections against self-incrimination can be

8  asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or

9  adjudicatory." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). In the

10  civil context, the invocation of the privilege is limited to those circumstances in which the person

11  invoking the privilege reasonably believes that his disclosures could be used in a criminal

12  prosecution, or could lead to other evidence that could be used in that manner." *Id.*

13      The Government's assertion that Mr. Gorman could not reasonably believe that his

14  responses could be used in a criminal prosecution is ridiculous. Essentially, the Government

15  employs a variation of the argument that only the guilty assert their Fifth Amendment right. This

16  directly ignores substantial jurisprudence that holds that Mr. Gorman's assertion of the Fifth

17  Amendment is as consistent with innocence as it is guilt.

18      In discussing the Fifth Amendment, the Nevada District Court in a recent unpublished

19  opinion remarked:

20      The privilege afforded not only extends to answers that would in themselves
        support a conviction under a ... criminal statute but likewise embraces those
21      which would *furnish a link in the chain of evidence needed to prosecute the
        claimant* for a ... crime.... But this protection must be confined to instances where
22      the witness has reasonable cause to apprehend danger from a direct answer.... It is
        for the court to say whether his silence is justified, ... and *to require him to
23      answer if "it clearly appears to the court that he is mistaken."* ... However, if the
        witness, upon interposing his claim, were required to prove the hazard in the
24      sense in which a claim is usually required to be established in court, he would be
        compelled to surrender the very protection which the privilege is designed to
25      guarantee. To sustain the privilege, *it need only be evident from the implications
        of the question, in the setting in which it is asked, that a responsive answer to
26      the question or an explanation of why it cannot be answered might be
        dangerous because injurious disclosure could result.*
27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

16 of 21

1   *Slagowski v. Cent. Washington Asphalt, Inc.*, 2:11-CV-00142-APG, 2014 WL 643038 (D. Nev.

2   Feb. 18, 2014)(unpublished) (citing *Hoffman v. U.S.*, 341 U.S. 479, 486–87 (1951)).

3         Given the verbiage of the Complaint for Forfeiture in Rem itself, any reasonable claimant

4   would fear that the Government could use his or her statements against him or her as a link in the

5   chain of evidence. In fact, the Complaint for Forfeiture in Rem speaks of intent to use the *res* to

6   obtain controlled substances, an allegedly illegal act. The Government's argument that a

7   claimant would have no concern that the Government would attempt to use his or her statements

8   against her ignores the very verbiage employed by the Government. Therefore, Mr. Gorman was

9   justified in asserting his Fifth Amendment right.

10        a.   The Government has not met its burden in demonstrating that a negative inference
             should be imposed.

11

12        Because there is some "tension between one party's Fifth Amendment rights and the other

13   party's right to a fair proceeding," this court has held that there are certain limits on when a court

14   in a civil case may give an adverse inference instruction that accompanies a witness's invocation

15   of the Fifth Amendment. *S.E.C. v. Jasper*, 678 F.3d 1116, 1125 (9th Cir. 2012)*; see also Doe ex*

16   *rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000)(citing Fed.R.Civ.P. 26(b)(5);

17   *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir.1979)). Whether a negative

18   inference should be imposed instead must be determined on a case-by-case basis. *Glanzer*, 232

19   F.3d at 1265.

20        The threshold question for whether a negative inference attaches is relevance. *Glanzer*,

21   232 F.3d at 1266. Even then, a negative inference can only be drawn when independent evidence

22   exists of the fact to which the party refuses to answer. *Id.* at 1264 (9th Cir. 2000).

23        "Because the privilege is constitutionally based, the detriment to the party asserting it

24   should be no more than is necessary to prevent unfair and unnecessary prejudice to the other

25   side." *Glanzer*, 232 F.3d at 1265 (quoting *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d

26   Cir.1994)). "No negative inference can be drawn against a civil litigant's assertion of his

27   privilege against self-incrimination unless there is a substantial need for the information and

28   there is not another less burdensome way of obtaining that information." *Glanzer*, 232 F.3d at

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

1264 (quoting *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518-19 (1st Cir.1996)).

        i.      *The only relevant question at this stage in the proceeding is standing, to which Mr. Gorman did not assert the Fifth Amendment.*

At this point, Mr. Gorman is entitled to challenge the seizure of the *res*. In order to do so Mr. Gorman must establish that he has standing to challenge the seizure, which he has done *supra*. As discussed above, before the Court determines the summary judgment motion it must consider the Motion to Suppress. Therefore, the only relevant question at this juncture is whether the *res* was seized in violation of the Fourth Amendment.

Any discovery requested by the Government that pertained to standing was answered. All other discovery requests were irrelevant. As such, no negative inference can attach, as the requests were not relevant.

        ii.     *The government is improperly attempting to force Mr. Gorman into either giving up his Fourth or Fifth Amendment Rights.*

As opposed to an ordinary challenge to the Government's right to bring a case, in forfeiture actions the government may commence limited discovery immediately after a verified claim is filed. "Supplemental Rule G(6)(a) provides that [t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 635 (9th Cir. 2012).

This presents the rare situation where the Government can solicit discovery requests while initial motion practice is occurring. Under the specific circumstances of this case, the Government is attempting to use the Fifth Amendment as a sword to force Mr. Gorman into compromising his claims under his Fourth Amendment right. Essentially, the government seeks negative inferences that would otherwise implicate Mr. Gorman in illegal activity.

"Because the privilege is constitutionally based, the **detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side**." *Glanzer*, 232 F.3d at 1265(emphasis added). At this point in the litigation, Mr. Gorman has sufficiently demonstrated his standing. Until the issue regarding the Motion to

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

18 of 21

1    Suppress is resolved, the Government suffers no prejudice. Therefore, to grant what are

2    essentially case determinative sanctions is inappropriate.

3                    iii.    *Mr. Gorman should have the opportunity to withdraw his invocation of his Fifth Amendment right after the decision on the Motion to Suppress.*

4
5            A party should be entitled to withdraw a Fifth Amendment privilege when (1) the litigant

6    was not using the privilege in a tactical, abusive manner, **and** (2) the opposing party would not

     experience undue prejudice as a result. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir.
7
     2012). Generally, the court should "take a liberal view towards [requests to withdraw the Fifth
8
     Amendment privilege], for withdrawal of the privilege allows adjudication based on
9
     considerations of all material facts to occur." *In re Urethane Antitrust Litig.*, 04-MD-1616-JWL,
10
     2013 WL 5466654 (D. Kan. Sept. 30, 2013)(unpublished); *In re Adler, Coleman Clearing Corp.*,
11
     95-08203 (JLG), 1998 WL 182808 (Bankr. S.D.N.Y. Apr. 17, 1998)(unpublished); *United States*
12
     *v. Certain Real Property*, 55 F.3d 78, 91 (2d Cir.1995); *United States v. Stelmokas*, 100 F.3d
13
     302, 310 (3d Cir.1996) (party who invokes Fifth Amendment may later revoke it).
14
15           As stated above, at this stage in the litigation, the only relevant question is whether the

16   *res* was seized in violation of the Fourth Amendment. If that is the case it is likely that Mr.

17   Gorman would not have to make any additional showing and he would be entitled to receive the

18   *res*. In such a scenario, it would be unnecessary for Mr. Gorman to make any statements that

     may provide a "link" in a chain of evidence needed to prosecute him.
19
20           Alternatively, if the Motion to Suppress is denied, which would necessarily require that

21   Mr. Gorman present further evidence, he may very well make the informed decision to waive his

     Fifth Amendment privilege. To require, however, that he make that choice prior to the
22
     determination of the Motion to Suppress, under threat of negative inference, would necessarily
23
     place at odds his Fourth and Fifth Amendment right, a constitutionally prohibited Hobson
24
     choice. *See generally Jones v. United States*, 362 U.S. 257, 261 (1960) *overruled on diff.*
25
     *grounds by U. S. v. Salvucci*, 448 U.S. 83 (1980).
26
27           Thus, Mr. Gorman is entitled to withdraw his Fifth Amendment Right after the Motion to

28   Suppress is decided should he choose. As the case is in its infancy the Government would not be

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

1    prejudiced in the least bit. Furthermore, Mr. Gorman is not abusing the right and has made the

2    admissions necessary to allow the Court to decide the Motion to Suppress, namely that he has an

3    ownership interest in the *res*.

## IV.

## CONCLUSION

6         Based on the foregoing, Mr. Gorman respectfully requests that the Court deny the

7    Government's request for Summary Judgment.

8         Dated this 11th day of March, 2014.

                                          GORDON SILVER

                                          _____
                                          MICHAEL V. CRISTALLI
                                          Nevada Bar No. 6266
                                          VINCENT SAVARESE, III
                                          Nevada Bar No. 2467
                                          3960 Howard Hughes Pkwy., 9th Floor
                                          Las Vegas, Nevada 89169
                                          (702) 796-5555
                                          Attorneys for Claimant, Straughn Samuel
                                          Gorman

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949                          20 of 21

1

### CERTIFICATE OF SERVICE

2       The undersigned, an employee of Gordon Silver, hereby certifies that on the 11th day of

3   April, 2014, she served a copy of the **Claimant Straughn Gorman's Opposition to Plaintiff's**

4   **Motion for Summary Judgment**, by filing through the Court's CM-ECF system to the parties

5   listed below:

6   Gregory W. Addington greg.addington@usdoj.gov, elizabeth.pantner@usdoj.gov,
    joanie.silvershield@usdoj.gov

7

8

9                                                       /s/Myra Hyde
                                                        Myra Hyde, an employee of
10                                                      GORDON SILVER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2203949

21 of 21

# EXHIBIT A

# EXHIBIT A



1              IN THE JUSTICE COURT OF THE ELKO TOWNSHIP

2            IN AND FOR THE COUNTY OF ELKO, STATE OF NEVADA

3

4    _____

5    IN THE MATTER OF AN

6    APPLICATION FOR A

7    SEARCH WARRANT BY                   RECEIVED

8    DEPUTY DOUG FISHER,                 JAN 7 8 2013

9            APPLICANT.                  ELKO COUNTY
                                         SHERIFF'S DEPARTMENT
10   _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                              1

1      DEPUTY FISHER:  Your Honor, the affidavit reads as

2  follows:  Judge Boatman, do you understand this phone call

3  is being recorded?

4      THE COURT:  Yes.

5      DEPUTY FISHER:  Judge Boatman, prior to activation of

6  this recording device, did we discuss any facts regarding

7  this telephonic search warrant application?

8      THE COURT:  No, we did not.

9      DEPUTY FISHER:  This is Deputy Fisher of the Elko

10  County Sheriff's Office and I'm making application for a

11  telephonic search warrant pursuant to NRS 179.045.  I am

12  talking with Judge Boatman.  The date is January 23, 2013,

13  and the time of the call is 11:02 hours.

14      Judge, I would like to provide my oath on the record.

15  I do solemnly swear that the evidence that I will give in

16  my statements in support of the issuance of this telephonic

17  search warrant is the truth, the whole truth and nothing

18  but the truth.

19      I am a law enforcement officer employed by the Elko

20  County Sheriff's Office in the County of Elko, State of

21  Nevada.  I have been so employed for more than one year.

22      I am conducting an investigation regarding possession

23  of controlled substances and related crimes contained

24  within the Uniform Controlled Substance Act which is

25  Chapter 453 of the Nevada Revised Statute.

1    There is probable cause to believe there may be

2    evidence of a crime inside a white 2001 Trail-Lite motor

3    home, a vehicle bearing license plate Delaware RV24145, now

4    situated at approximately Mile Marker 295 on Interstate 80

5    in the County of Elko, State of Nevada.

6    The registered owner of the vehicle is Kyle William

7    Hopkins, and the driver of the vehicle is Straughn Samuel

8    Gorman.

9    The evidence sought to be found and constituting

10   evidence that tends to demonstrate or disprove that

11   criminal acts are being committed by the person or persons

12   with custody or control of the vehicle is as follows:

13   Controlled substances, paraphernalia, articles of personal

14   property tending to identify the person or persons in

15   control of the vehicle to be searched, and/or any

16   contraband, fruits, instrumentalities and any evidence of a

17   crime at this time unknown which may come into view of the

18   searching officers, including but not limited to any

19   instrumentalities or objects consistent with controlled

20   substance violations, any persons who had occupied the

21   vehicle at which time the search warrant is executed, any

22   containers or items located inside the interior and/or

23   exterior of the vehicle, any compartments which may need to

24   be accessed by the use of tools.

25   In support of the probable cause to issue a telephonic

3

1    search warrant the following facts are based upon prior

2    training, experience, personal knowledge, information, and

3    belief:  Deputy Fisher was on patrol along Interstate 80 in

4    the County of Elko, State of Nevada in a patrol unit on

5    January 23, 2013.

6         At approximately 10:25 hours, Deputy Fisher observed a

7    white 2001 Trail-Lite motor home, a vehicle bearing license

8    plate Delaware RV24145 traveling along Interstate 80 in the

9    County of Elko, State of Nevada.

10         Deputy Fisher observed the vehicle's driver violate

11    the traffic law in the following manner:  As the motor home

12    approached my location, I noticed the vehicle drift to the

13    right and drive on the white fog line.  I further noticed

14    the driver had the curtain pulled forward on the driver's

15    side window which obstructs the driver's view of the

16    vehicle's left blind area which is a violation of

17    NRS 484B.163 and 484B.300.

18         Deputy Fisher conducted a traffic enforcement stop on

19    the vehicle at approximately Mile 295 on Interstate 80 in

20    the County of Elko, State of Nevada, and made contact with

21    the driver later identified as Straughn Samuel Gorman.  The

22    passengers were zero in numbers.

23         Deputy Fisher had reason to believe that the vehicle

24    may contain controlled substance based on the following

25    observations and information:  The driver indicated --

4

1    correction.  Let me back up.  Upon initial -- upon initial
2    lighting of the overhead lights, Deputy Fisher followed the
3    vehicle for approximately four miles before the vehicle
4    pulled over and noticed that he was following and trying to
5    affect the traffic stop.  The driver indicated he was
6    traveling from Delaware to Sacramento, California and
7    became very difficult at the beginning of the traffic stop.
8    The driver indicated he'd been stopped about an hour
9    earlier and did not want to answer any other questions.
10   Based upon my training and experience and the abrupt
11   initial contact I questioned the subject's reason --
12   reaction when he agreed that the window view was
13   obstructed.  The driver indicated he had no job.  And upon
14   an EPIC check it was informed the driver had multiple
15   border crossings with the most recent in 2012 from Madrid,
16   Spain, into the United States.  Secondly, it was informed
17   the subject transferred $11,000 cash to another subject
18   with an unknown name.
19       Based upon this, Deputy Fisher obtained a trained
20   canine in the detection of controlled substance to walk
21   around the vehicle.  The detection canine obtained was
22   Canine Euros, a trained canine in the detection of
23   controlled substances.  Deputy Fisher of the Elko County
24   Sheriff's Office is Canine Euros' handler.
25       Canine team Deputy Fisher and Canine Euros are trained

5

1    and certified to detect the odor of narcotics.  These

2    substance include marijuana, cocaine, heroin,

3    methamphetamines, MDMA, more commonly known as ecstasy.

4    Upon location of the narcotics odor, the dog's behavior

5    will change.  Canine handler Deputy Fisher conducts ongoing

6    training daily, weekly and monthly to recognize Canine

7    Euros' change in behaviors, which would indicate the alert

8    for the odor of narcotics.

9        Canine team Deputy Fisher and Canine Euros are

10   currently nationally certified to detect the odor of

11   narcotics.  Canine team Deputy Fisher and Canine Euros have

12   met the basic standards set by at least one national canine

13   certifying organization.  Deputy Fisher has been a

14   certified canine handler since December 2005.

15       Canine team Deputy Fisher and Canine Euros have proven

16   reliability through their high level of continuous ongoing

17   daily, weekly, and monthly training and through prior

18   street performance.

19       Canine Euros alerted to the right rear fender and

20   cargo department by displaying changes in breathing, rapid

21   sniffs, along with a committed sit and stare response, with

22   a final committed down and stay final response, which

23   indicated to Deputy Fisher that there may be controlled

24   substances or substances inside the vehicle.

25       THE COURT:  Deputy Fisher, can you hear me still?

6

1    DEPUTY FISHER:  Yes.

2    THE COURT:  Can you repeat after you said "Deputy

3    Fisher, there may be a controlled substance".  I didn't --

4    it cut off.

5    DEPUTY FISHER:  Okay.  It says Deputy Fisher, that --

6    I'll just go back one.  Which indicated to Deputy Fisher

7    that there may be a controlled substance or controlled

8    substances inside the vehicle.

9    THE COURT:  Thank you.

10   DEPUTY FISHER:  Deputy Fisher believes there's just

11   cause to serve this telephonic search warrant at any hours

12   of the day based on --

13   THE COURT:  Deputy Fisher, start that part again.

14   You're cutting out again.

15   DEPUTY FISHER:  Sorry.  Let me reposition the mic.

16   Deputy Fisher believes that there is just cause to serve

17   this telephonic search warrant at any hours of the day or

18   night based upon the facts and/or circumstances:  The

19   vehicle was parked along the roadway where the vehicle is

20   not normally parked, to not delay the driver and/or

21   occupants from their travels, and so there is no added

22   expenses with the prolonged delay in the driver -- driver's

23   travels.

24       For this reason, Deputy Fisher requests a search

25   warrant to search the vehicle for controlled substances,

7

1    paraphernalia, articles of personal property tending to

2    identify the person or persons in control of the vehicle to

3    be searched and/or any contraband, fruits,

4    instrumentalities and any evidence of a crime at this time

5    unknown which may come into view of the searching officers,

6    including but not limited to any instrumentalities or

7    objects consistent with controlled substance violations,

8    any persons who had occupied the vehicle at which time the

9    search warrant is executed, any containers or items located

10   inside the interior and/or exterior of the vehicle, any

11   compartments which may need to be accessed by the use of

12   tools.

13        Your Honor, the search warrant reads as follows:  The

14   State of Nevada to any peace officer in the County of Elko,

15   proof having been made before me by Deputy Fisher, by sworn

16   under oath telephonic statement incorporated by reference

17   herein that there is probable cause to believe evidence, to

18   wit:  Controlled substances, paraphernalia, articles of

19   personal property tending to identify the person or persons

20   in control of the vehicle to be searched, and/or any

21   contraband, fruits, instrumentalities, and any evidence of

22   a crime at this time unknown which may come into view of

23   the searching officers, including but not limited to any

24   instrumentalities or objects consistent with controlled

25   substance violations, any persons who had occupied the

8

1   vehicle at which time the search warrant is executed, any

2   containers or items located inside the interior or exterior

3   of the vehicle, any compartments which may need to be

4   accessed by the use of tools may be located inside a white

5   2001 Trail-Lite motor home, a vehicle bearing license plate

6   Delaware RV24145 now situated at approximately Mile

7   Marker 295 on Interstate 80 in the County of Elko, State of

8   Nevada, and as I am satisfied that there's probable cause

9   to believe that said evidence may be located as set forth

10  above and based upon the sworn telephonic statement of

11  Deputy Fisher there are sufficient grounds for issuance of

12  a search warrant.

13      You are hereby commanded to said location for said

14  property, serving this warrant at any hours of the day or

15  night, and if the property is there, to seize it, and leave

16  a written inventory and make a return before me within ten

17  days.

18      Your Honor, I am requesting authority to sign your

19  name on two identical search warrants and authority to

20  serve one copy upon the occupants of the vehicle and

21  execute the search warrant immediately as I am at the

22  vehicle right now.

23      THE COURT:  All right.  Deputy Fisher, you are going

24  to be granted the search warrant on this, the 23rd day of

25  January 2013.

9

1       DEPUTY FISHER:  I'm going to sign it "Judge Boatman".

2   The time is 11:15 hours.  Your Honor, one warrant will be

3   served upon the vehicle's occupants and the other warrant

4   will be filed with the court along with the transcriptions

5   of my recorded testimony.

6       Your Honor, I have placed your name on the duplicate

7   originals and the correct date and time has been noted on

8   each.

9       Thank you, Judge.  Do you have anything else?

10      THE COURT:  No, sir.  Thank you very much.  Be safe.

11      DEPUTY FISHER:  Thanks, Judge.  Bye.

12      THE COURT:  Bye.

13  (Whereupon the Application for Search Warrant was

14  concluded.)

15

16

17

18

19

20

21

22

23

24

25

1    I, BRIAN E. BOATMAN, Acting Justice of the Peace of

2    Elko Township, County of Elko, State of Nevada, hereby

3    certifies:

4

5    That CATHERINE A. FISHER was duly appointed and sworn

6    to transcribe the telephonic search warrant application

7    made and the telephonic search warrant which was issued on

8    the 23rd day of January 2013.

9    That at the conclusion of the application, it

10   appearing that there was probable cause for the issuance of

11   the warrant, said search warrant was issued.

12

13

14                        _____

15                        Acting Justice of the Peace of
                          Elko Township, Elko County, State
16                        of Nevada.

17

18

19

20

21

22

23

24

25

```
 1              IN THE JUSTICE COURT OF ELKO TOWNSHIP

 2           IN AND FOR THE COUNTY OF ELKO, STATE OF NEVADA

 3

 4     _____

 5     IN THE MATTER OF AN

 6     APPLICATION FOR A

 7     SEARCH WARRANT BY

 8     DEPUTY DOUG FISHER,

 9          APPLICANT.

10     _____

11

12                      REPORTER'S DECLARATION

13          I HEREBY DECLARE:  That I was duly appointed and sworn

14     by the Justice of the Peace of Elko Township, Elko County,

15     Nevada, to transcribe the telephonic search warrant

16     application made on the 23rd day of January, 2013, and that

17     the foregoing transcript contains a full, true and complete

18     transcript of the telephonic search warrant application, to

19     the best of my ability to hear and understand said recorded

20     telephonic search warrant application.

21

22          DATED THIS _____ day of _____, 2013.

23

24                         _____

25                         CATHERINE A. FISHER
```

# EXHIBIT B

# EXHIBIT B

1

## DECLARATION OF VINCENT SAVARESE, III, ESQ.

2

I, Vincent Savarese, III, Esq., state that:

3    1.   I am an attorney with the law firm of Gordon Silver, counsel of record for

4  Claimant Straughn Samuel Gorman in the instant matter, and duly licensed to practice law before

5  all Courts in the State of Nevada.

6    2.   I am knowledgeable of the facts contained herein and am competent to testify

7  thereto.

8    3.   I make this Declaration in support of Claimant Straughn Gorman's Motion to

9  Suppress and Claimant Straughn Gorman's Opposition to Plaintiff's Motion for Summary

10  Judgment in the matter entitled *United States of America v. $167,070.00 in United States*

11  *Currency,* Case No. 3:23-cv-00324-LRHVPC, presently pending before this Court.

12    4.   I have been provided with 2 live video and audio camera recordings by Assistant

13  United States Attorney Greg Addington depicting in part the events occurring during the

14  detention of Straughn Samuel Gorman and the subsequent search of the motor home he was

15  operating on January 23, 2013 ("the motor home") by Deputy Doug Fisher of the Elko County

16  Sheriff's Office.

17    5.   Based upon my review of those video/audio recordings, it appears to me that they

18  were acquired by means of a camera/recording device worn by Deputy Fisher upon his person

19  during the course of those events.

20    6.   Video #1 depicts all of the events without interruption occurring from the time of

21  the initial stop of the motor home until the announcement by Deputy Fisher of his intention to

22  seek a telephonic search warrant authorizing a search of the interior of that vehicle and all

23  interaction during that time by and between Deputy Fisher and Mr. Gorman and by and between

24  Deputy Fisher and former Elko County Deputy Sheriff David Prall (who had also arrived on the

25  scene shortly after the initial stop of the motor home by Deputy Fisher).

26    7.   Video #2 depicts part of the conduct of the subsequent search of the interior of the

27  motor home by Deputy Fisher, but begins after that search is already in progress.

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2260702

1 of 4

1    8.    Based upon my review of Video #1, it shows the events hereinafter described.

2    9.    During his first encounter with Mr. Gorman following the initial stop of the motor

3    home, Deputy Fisher questioned Mr. Gorman regarding the following subjects, among others:

4         a. His destination;

5         b. Why he was going there;

6         c. Whether he was moving there or just visiting; and

7         d. Whether he was gainfully employed.

8    10.   In response to Deputy Fisher's question regarding his employment, Mr. Gorman

9    did not advise Deputy Fisher that he was unemployed. Rather he expressly advised Deputy

10   Fisher that he owns a paddleboard company in Maui, Hawaii and conducts various other

11   (economic) "beach activities" there.

12   11.   Upon thereafter returning to and re-entering his patrol vehicle, Deputy Fisher

13   immediately procured a consent-to-search form and proceeded to fill it out.

14   12.   Deputy Fisher completed this task at 7:00 minutes into the traffic stop.

15   13.   During this time, another Elko County Sheriff's Office deputy, Deputy David

16   Prall arrived on the scene of the vehicle stop operating another marked Elko County Sheriff's

17   Office patrol vehicle, and at 5:15 minutes into the traffic stop, Deputy Fisher requested that

18   Deputy Prall "stick around."

19   14.   During this time Deputy Fisher did not initiate a records check with Elko County

20   Sheriff's Office dispatch with respect to Mr. Gorman's driver's license, vehicle registration or

21   proof of insurance or any independent "EPIC" check. Rather, upon filling out the consent-to-

22   search form, Deputy Fisher exited his vehicle, walked over to Deputy Prall's patrol vehicle, and,

23   at 7:15 minutes into the vehicle stop, handed Mr. Gorman's driver's license, vehicle registration

24   and proof of insurance to Deputy Prall.

25   15.   Deputy Fisher thereafter re-contacted Mr. Gorman outside the motor home and

26   solicited his consent to a search of the interior of that vehicle, or in the alternative, to a canine

27   sniff of the exterior of the motorhome, which Mr. Gorman declined to provide.

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

16.     Deputy Fisher also advised Mr. Gorman that he would like him to answer some more questions, which Mr. Gorman declined to do.

17.     At 8:15 minutes into the traffic stop, Mr. Gorman asked Deputy Fisher if he was going to be issued a traffic citation and be permitted to continue on his way.

18.     In response, Deputy Fisher advised Mr. Gorman that he was going to be detained pending completion of a records check.

19.     At 9:40 minutes into the traffic stop, Deputy Fisher advised Mr. Gorman that he was going to conduct a canine sniff of the exterior of the motorhome.

20.     At 10:23 minutes into the traffic stop, Deputy Fisher requested that Deputy Prall perform a records check with respect to Mr. Gorman's driver's license, vehicle registration and proof of insurance with Elko County Sheriff's Office dispatch.

21.     At 10:34 minutes into the traffic stop, Deputy Fisher removed his canine "Euros" from his patrol vehicle and placed him on a lead.

22.     At 11:20 minutes into the traffic stop, Deputy Fisher requested that Deputy Prall perform an "EPIC" check with respect to Mr. Gorman.

23.     At 11:45 minutes into the traffic stop, Deputy Fisher initiated a canine sniff of the exterior of the motor home, and at 12:40 minutes into the traffic stop, the canine sniff was completed.

24.     At 14:00 minutes into the traffic stop, Deputy Fisher advised Mr. Gorman that a telephonic search warrant for the motor home would be sought.

///

///

///

///

///

///

///

///

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2260702

3 of 4

1          25.    At 16:30 minutes into the traffic stop, Deputy Fisher returned to his patrol vehicle

2    to pursue application for the issuance of a telephonic search warrant for the motor home.

3          I declare under penalty of perjury under the laws of the State of Nevada (NRS 53.045)[1],

4    that the foregoing is true and correct.

5          Executed this _11th_ day of April, 2014

6

7                            VINCENT SAVARESE, III, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    _____
      [1] **NRS 53.045** Use of unsworn declaration in lieu of affidavit or other sworn declaration.  Any matter whose
27    existence or truth may be established by an affidavit or other sworn declaration may be established with the same
      effect by an unsworn declaration of its existence or truth signed by the declarant under penalty of perjury, and dated,
28    in substantially the following form:

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104120-001/2260702                                    4 of 4

# EXHIBIT C

# EXHIBIT C



# Elko County Sheriffs Office
## Deputy Report for Case 13EL00100

13-001351

| | | |
|---|---|---|
| **Nature:** K-9 EL | **Address:** I80 MM 295 | |
| **Location:** EL5B | Elko NV 89801 | |

| | | |
|---|---|---|
| **Offense Codes:** CSWO | | |
| **Received By:** Fisher D J | **How Received:** T | **Agency:** ELSO |
| **Responding Officers:** Fisher D J | | |
| **Responsible Officer:** Fisher D J | **Disposition:** ACT 01/24/13 | |
| **When Reported:** 10:25:00 01/23/13 | **Occurred Between:** 10:25:00 01/23/13 and 13:37:00 01/23/13 | |

| | | |
|---|---|---|
| **Assigned To:** | **Detail:** | **Date Assigned:** **/**/** |
| **Status:** | **Status Date:** **/**/** | **Due Date:** **/**/** |

**Complainant:**
| | | |
|---|---|---|
| **Last:** | **First:** | **Mid:** |
| **DOB:** **/**/** | **Dr Lic:** | **Address:** |
| **Race:**   **Sex:** | **Phone:** | **City:**  , |

**Offense Codes**
| | |
|---|---|
| **Reported:** | **Observed:** |

**Additional Offense:** CSWO Cont. Subs. Poss. Drug w/o Rx

**Circumstances**
  LT13 Highway, Road, Alley

**Responding Officers:**                              **Unit :**
   Fisher D J

| | | |
|---|---|---|
| **Responsible Officer:** Fisher D J | **Agency:** ELSO | |
| **Received By:** Fisher D J | **Last Radio Log:** **:**:** **/**/** | |
| **How Received:** T Telephone | **Clearance:** C Report Taken | |
| **When Reported:** 10:25:00 01/23/13 | **Disposition:** ACT **Date:** 01/24/13 | |
| **Judicial Status:** | **Occurred between:** 10:25:00 01/23/13 | |
| **Misc Entry:** | **and:** 13:37:00 01/23/13 | |

| | | |
|---|---|---|
| **Modus Operandi:** | **Description :** | **Method :** |

**Involvements**

16:36:30 01-25-13

| Date | Type | Description | |
|------|------|-------------|---|
| 01/24/13 | Name | Gorman, Straughn Samuel | Suspect / Driver |
| 01/25/13 | Vehicle | 0 DE | Vehicle |
| 01/25/13 | Property | Pager Pay owe sheets 1 | Property |
| 01/25/13 | Property | BLK Computer Compac 1 | Property |
| 01/25/13 | Property | Map 1 | Property |
| 01/25/13 | Property | BLK Cellular Phone LG 1 | Property |
| 01/25/13 | Property | SIL GPS TomTom 1 | Property |
| 01/25/13 | Property | BLU Cellular Phone Casio 1 | Property |
| 01/25/13 | Property | BLU Drug Capsules 1 | Property |
| 01/25/13 | Property | Drug inhaler 1 | Property |
| 01/24/13 | Property | GRN Cash US Currency 3250 | Property |
| 01/24/13 | Property | GRN Cash US Currency 4080 | Property |
| 01/24/13 | Property | GRN Cash US Currency 4000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 9900 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 13000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 11960 | Property |
| 01/24/13 | Property | GRN Cash US Currency 9920 | Property |
| 01/24/13 | Property | GRN Cash US Currency 10000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 1880 | Property |
| 01/24/13 | Property | GRN Cash US Currency 2000 | Property |
| 01/24/13 | Property | GRN Cash US Currency 5060 | Property |
| 01/24/13 | Property | GRN Cash US Currency 5020 | Property |
| 01/24/13 | Property | GRN Cash US Currency 5000 | Property |

**Narrative**

On 01/23/13 at approximately 10:20, I Deputy Fisher noticed a white motorhome traveling westbound on Interstate 80 at approximately mile marker 302. I noticed that the driver's side window curtain was pulled completely forward, which obstructed the driver's view of his left side mirror and the left side blind area of the vehicle.

As I followed the vehicle, I noticed the vehicle drift right and drive on the white fog line three times. The driver drove on the white fog line for a distance of greater than 400 to 500 yard each time. I also noticed the blinds/curtains in the rear window of the motorhome were completely closed, which limited the rear view of the driver to just the right side mirror. East of the 298 exit near the 299 mile marker, I activate my overhead lights and followed directly behind the motorhome for approximately one mile. I then straddled the center white line with my patrol vehicle, making my patrol unit more visible behind the motorhome and followed the motorhome for approximately one more mile. I then moved closer to the motorhome and activated my siren for two short bursts. The driver continued westbound on Interstate 80 and did not respond to my overhead lights and/or a short siren bursts. I then pulled up along beside the motorhome in the number one travel lane and again active my siren for two more bursts. This time the driver pulled the curtain back in order to see out the left side mirror, and pulled over for my traffic stop.

As I approached the vehicle, the driver exited the main door of the motorhome, paperwork in hand and already dressed with his coat, gloves and hat. I could see the driver's heart beat in his neck. The driver informed me he was going to Sacramento to see his girlfriend. In clarifying questions, he first stated he was going to move out there and then going to hang out there. The driver then informed me he was pulled over about 40 minutes prior. The driver indicated he was pulled over for the same thing or something like driving on the line. I explained that I lit him up near the 299 mile marker and we were now located at the 295 mile marker (just west of the 295 mile marker). The drivers stated he apologized, stated the sun was in his eyes and he would pull it back. I spoke to him about the left side blind area of the vehicle. The driver indicated he had a mesh thing to block the sun, but it would not stick to the window because it was cold.

When asked if he had a job, the driver stated he had beach activities in Maui, and a paddleboard company. The driver then stated he told the other officer the same thing and he was upset over the whole things. I noticed the driver had a pale grayish look about his face and neck.

I returned to my patrol unit and paged Elko Central Dispatch in an attempt to run a records inquiry. The driver was Struaghn Gorman from Milton Delaware. After paging Elko Central Dispatch twice, with no response and hearing a medical being dispatched, I requested that Deputy Prall conduct the records inquiry through Elko Central Dispatch for me while I further spoke with Gorman.

I informed Gorman that dispatch was busy on a medical and asked if he would answer a few questions for me. Gorman stated he did mind because he was asked a bunch a questions at the other place. When I asked what did the other officer ask him, Gorman raised his arms and questioned if he was being detained. I informed Gorman he was being detained because I had not run him through dispatch, they were busy and until I checked on his information, he was being detained.

Gorman began to show emotions of being upset and appeared to me, Gorman was

getting more nervous and slightly argumentative by the tone of his voice and body language. I asked Gorman if he had any opposition to me running my drug-detecting canine around his vehicle. Gorman stated he has opposition if that means anything. Gorman consented to a search of his person for weapons. No weapons were upon Gorman's person.

I brought K-9 EUROS to the front of the motorhome and commanded K-9 EUROS to sniff for the odor of narcotics. I performed an exterior canine sniff of the vehicle. K-9 EUROS displayed breathing changes, rapid sniffs, along with a committed sit and stare response with a committed down and stay response to the right rear fender and rear cargo department. K-9 EUROS behavior changes indicated to me that K-9 EUROS was alerting for the odor of narcotics.

I explained to Gorman he was still being detained until dispatch returned with his information, however his vehicle was being seized pending a search warrant application. Gorman became more adversarial when I informed him of this information. Gorman stated the vehicle contained no drugs and the dog did not hit anything. Gorman then made the claim I made my dog alert and then claimed it was a setup. Gorman further stated he read about this stuff, but had never seen it, and displayed a noticeable behavior change.

Gorman stated he could open that and let us look in there, referring to the exterior cargo box. Gorman stated it was charcoal and asked if we wanted to look in it. Knowing full well narcotic odors will follow the path of least resistance and can escape the vehicle through any seam, I asked Gorman if he wanted to talk with me know, Gorman stated no I don't want to talk with you, however continued making statements and asking me questions. I also told Gorman the rear of the vehicle was on the downwind side of the vehicle.

While I prepared the attached telephonic search warrant, Gorman sat inside the rear caged area of Deputy Prall's patrol unit. Gorman was advised he was not under arrest and again was only being detained until his information returned.

I prepared the attached telephonic search warrant and after review, Judge Boatman granted the attached telephonic search warrant at approximately 11:15.

Just thereafter, I served the duplicate coy of the telephonic search warrant to Gorman.

I brought K-9 EUROS inside the motorhome and commanded K-9 EUROS to sniff for the odor of narcotics. K-9 EUROS immediately began biting and mouthing Gorman's backpack, clothes and blankets. After redirecting EUROS attention to an interior canine sniff of the vehicle, K-9 EUROS displayed breathing changes high inside the vehicle, stood on his back legs in order to get higher inside the vehicle along with rapid sniffs to the overhead cargo cabinets. K-9 EUROS provided to final responses of sit and stare inside the vehicle. The first one was to a black and grey backpack lying on the floor next to the rear master bed and the second was on top of the rear master bed after K-9 EUROS had sniffed the overhead cargo cabinets above the master bed.

During a search of the vehicle, the following items were noticed, photographed as evidence and/or ultimate seized as evidence:

DF#1: a white envelope contained US currency and "mine" was written on the exterior of the white envelope. A credit card in the name of Straughn Gorman with $192.00 in loose US currency was located inside the exterior pouch of a black and gray suitcase. Location seized from: the white envelope was seized from a black and gray suitcase. After a count of the US currency, this white

envelope was later labeled and referred to as bundle #1, for an amount of $3250.00.

DF#2: was a rubber banded bundle of US currency. Location seized from: inside the exterior pouch of a black and gray backpack next to the rear master bed. After a count of the US currency, the bundle was later labeled and referred to as bundle #2, for an amount of $4080.00.

DF#3: was a rubber banded bundle of US currency. Location seized from: inside the exterior pouch of a black and gray backpack next to the rear master bed. After a count of the US currency, the bundle was later labeled and referred to as bundle #3, for an amount of $4000.00.

The following bundles of US currency was located in various locations throughout the motorhome to include the overhear cargo cabinets, refrigerator, microwave and were sealed inside plastic vacuum-packed food saver bags. On the exterior of the plastic food saver bags were amounts written in black marker.

DF#4: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #4, for an amount of $9900.00.

DF#5: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #5, for an amount of $10000.00.

DF#6: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #6, for an amount of $10000.00.

DF#7: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #7, for an amount of $10000.00.

DF#8: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #8, for an amount of $10000.00.

DF#9: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #9, for an amount of $10000.00.

DF#10: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #10, for an amount of $10000.00.

DF#11: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #11, for an amount of $10000.00.

DF#12: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #12, for an amount of $13000.00.

DF#13: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #13, for an amount of $10000.00.

DF#14: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #14, for an amount of $11960.00.

DF#15: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #15, for an amount of $9920.00.

DF#16: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #16, for an amount of $10000.00.

DF#17: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #17, for an amount of $1880.00.

DF#18: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #18, for an amount of $4000.00.

DF#19: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #19, for an amount of $5060.00.

DF#20: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #20, for an amount of $5020.00.

DF#21: Were multiple rubber-banded bundles of US currency. After a count of the US currency, the bundle was later labeled and referred to as bundle #21, for an amount of $5000.00.

DF#22: (15) pages with various notes that clearly referred to costs, runs and expenses. These pages of notes appeared to be pay and owe sheets commonly used by drug dealers to keep track of their day-to-day business. Location seized from: inside the exterior cargo pocket of the gray and black backpack next to the master bed. I would further note, indicia (insurance papers) in the name of Straughn Gorman were located in with the papers that appeared to be pay and owe sheets.

DF#23: (1) Compac Pesario CQ61 laptop computer, SN#CNF0141QVS. Location seized from: inside the gray and black backpack.

DF#24: (6) printed Google map pages with driving instructions from Milton Delaware to Garberville California. Location seized from: inside a US atlas book located on the passenger seat.

DF#25: (1) black LG cell phone. Location seized from: on the floor near the side door.

DF#26: (1) TomTom GPS mapping device. Location seized from: vehicles dash. (1) Canon SD1400IS digital camera. Location seized from: gray and black backpack next to the master bed.

DF#27: (1) blue Casio cell phone. Location seized from: the couch just behind the drivers seat.

DF#28: (1) plastic prescription bottle that contained (10) capsules with the imprint "M. Amphet Salts" and (2) tablets with the imprint "10 MG". Location

16:36:30 01/25/13

seized from: inside the gray and black backpack next to the master bed.

DF#29: (1) prescribed Proventil inhaler. The prescribed name on the exterior of
the inhaler box was Ryan Cavalear. Location seized from: inside the gray and
black backpack next to the master bed. I would note through my training and
experience, inhalers such as this one are commonly used by chronic marijuana
smokers.

During the search of the motorhome, I noticed several other indicators commonly
associated with illicit narcotics activities specifically large loads of
marijuana. Under the master bed were empty large canvas duffle bags and an empty
Pelican case. Gorman's suitcase contained a T-shirt with the logo "DNA GENETICS
world leader in medicinal cannabis seeds. Details contained on the pay and owe
sheets along with receipts for the Pelican case and vehicle maintenance records
lead me to believe the motorhome had been used multiple times to transport large
amounts of US currency and/or large loads of illicit narcotics.

Based upon the totality of the above information, I believed the large amount of
US currency randomly stored inside the motorhome was ill-gotten gains. Since we
were along the Interstate and still needed to finish processing the vehicle and
did not want to be alongside the Interstate for a prolonged period of time, I
decided to tow the vehicle to the Elko County Sheriff Office and finish the
search warrant there.

I informed Gorman he was free to leave the scene, however the motorhome was
going to be towed to the Elko County Sheriff's Office and pending possible civil
forfeiture. Gorman wanted to argue about my decision because nothing was illegal
inside the vehicle. I confronted Gorman by stating he did not have a job, which
was not what he told me in the beginning. Gorman did not challenge or try to
correct me about having a job. I asked Gorman if he wanted to fill a currency
questionnaire out. Gorman was more concerned with why I was seizing the
motorhome and stated he could fill out the questionnaire later if he decided.
Gorman continued to argue that nothing illegal inside the vehicle. I asked if
Gorman if he had a bank form that would allow him to transport more than 9999.99
in cash. Gorman stated no.

Gorman indicated I was going to leave him with nothing, so I retrieved $192.00
in loose cash and his credit card from the black and gray suitcase, Gorman also
had his driver license. Deputy Prall provided Gorman a ride into town.

Lostra Brothers Towing towed the vehicle to the Elko County Sheriff's Office.
Detective Hood and I maintain contact with the vehicle from the roadside to the
Elko County Sheriff's Office where the service of the search warrant was
finished.

At the Elko County Sheriff's Office, Detective Hood and I completed the search
warrant inventory report and left it in plain view on the dash of the vehicle.

Once Detective Hood arrived on scene just after the initial service of the
search warrant on the motorhome at approximately 11:15, Detective Hood remained
with me until the US currency was counted and secured inside the Elko County
Sheriff's Office evidence vault. Each of the bundles were counted three separate
times to confirm the amount of US currency, sealed within an evidence bag and
initialed by both Detective Hood and I.

On 01/24/13, I returned the digital audio recording, affidavit in support of the
telephonic search warrant, search warrant and search warrant inventory report to
the Elko Justice Court.

Based upon the above information, I am requesting civil forfeiture of the US currency and the motorhome.

Attachments
CD with digital audio/video recordings and digital photographs
Detailed information of each bundle of US currency
Copy of telephonic search warrant and affidavit
Copy of vehicle impoundment and inventory report
Lostra Brothers Towing invoice
Unsigned consent to search

END OF REPORT
DEPUTY FISHER

Responsible LEO:

Approved by:

Date                01/25/13

**Supplement**

ELKO COUNTY SHERIFF'S OFFICE
OFFICER REPORT

OFFICER DECLARATION

I hereby certify that I am a law enforcement officer, employed by the Elko
County Sheriff's Office, and that I am one of the officers investigating or
aware of the facts described in the reports and statements attached hereto.  I
hereby affirm under pain and penalty of perjury that the facts set out in the
reports and statements attached hereto are true to the best of my knowledge,
information, and belief except as otherwise noted therein.

Lead Officer: D. Fisher

Date of Declaration: 01/24/13

**Supplement**
To be forwarded to:

```
___X  File
___   Detectives
___   District Attorney
___   Juvenile Probation & Detention
___   City Attorney for:_____
___   Narcotics Task Force
___   Juvenile Task Force
___   Adult Parole & Probation
___   Dept. of Child & Family Services
___   Elko Police Department
___   Nevada Highway Patrol
___X  Other:__Drug Enforcement Agency_____
```

## Vehicles

**Vehicle Number:**
    161273

| | | | |
|---|---|---|---|
| **License Plate:** | RV24145 | **License Type:** | PC Regular Passenger Automobile |
| **State:** | DE | **Expires:** | 09/14/13 |
| **Vehicle Year:** | 0 | **VIN:** | 5B4JP57G513329203 |
| **Make:** | | **Model:** | |
| **Color:** | / | **Doors:** | 0 |
| **Vehicle Type:** | MH Motorized Home | **Value:** | $1.00 |

**Owner:**

| | | | | |
|---|---|---|---|---|
| **Last:** | | **First:** | **Mid:** | |
| **DOB:** | **/**/** | **Dr Lic:** | **Address:** | |
| **Race:** | **Sex:** | **Phone:** | **City:** | , |

| | |
|---|---|
| **Agency:** | ELSO Elko County Sheriffs Office |
| **Officer:** | Fisher D J |
| **UCR Status:** | |

**Date Recov/Rcvd:** **/**/**
**Area:**
**Wrecker Service:** ELOS Lostra Brothers Towing, LLC

| | |
|---|---|
| **Local Status:** | SZD Seized |
| **Status Date:** | 01/23/13 |
| **Comments:** | |

**Storage Location:** Elko County SO
**Release Date:** **/**/**

16:36:30 01/25/13

## Property

|  |  |
|---|---|
| **Property Number:** 14722 |  |
| **Item:** Pager | **Owner Applied Nmbr:** |
|  |  |
| **Brand:** Pay owe sheets | **Model:** |
| **Year:** 0 | **Quantity:** 15 |
| **Meas:** EA | **Serial Nmbr:** |
| **Total Value:** $1.00 | **Color:** |
| **Owner:** Gorman Straughn Samuel 205134 |  |
| **Agency:** ELSO Elko County Sheriffs Office | **Tag Number:** DF#22 |
| **Accum Amt Recov:** $0.00 | **Officer:** Fisher D J |
| **UCR:** NON Nonnegotiable Instruments | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** **/**/** | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $0.00 |
| **Released To:** | **Custody:** **:**:** **/**/** |
| **Reason:** |  |
| **Comments:** |  |
| **Property Number:** 14723 |  |
| **Item:** Computer | **Owner Applied Nmbr:** |
|  |  |
| **Brand:** Compac | **Model:** |
| **Year:** 0 | **Quantity:** 1 |
| **Meas:** EA | **Serial Nmbr:** CNF0141QVS |
| **Total Value:** $1.00 | **Color:** BLK |
| **Owner:** Gorman Straughn Samuel 205134 |  |
| **Agency:** ELSO Elko County Sheriffs Office | **Tag Number:** DF#23 |
| **Accum Amt Recov:** $0.00 | **Officer:** Fisher D J |
| **UCR:** CHS Computer Hardwre or Softwre | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** **/**/** | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $0.00 |
| **Released To:** | **Custody:** **:**:** **/**/** |
| **Reason:** |  |
| **Comments:** |  |
| **Property Number:** 14725 |  |
| **Item:** Map | **Owner Applied Nmbr:** |
|  |  |
| **Brand:** | **Model:** |

16:36:30 01/25/13

| | | | | |
|---|---|---|---|---|
| **Year:** | 0 | | **Quantity:** | 6 |
| **Meas:** | EA | | **Serial Nmbr:** | |
| **Total Value:** | $1.00 | | **Color:** | |
| **Owner:** | Gorman Straughn Samuel 205134 | | | |
| **Agency:** | ELSO Elko County Sheriffs Office | | **Tag Number:** | DF#24 |
| **Accum Amt Recov:** | $0.00 | | **Officer:** | Fisher D J |
| **UCR:** | NON Nonnegotiable Instruments | | **UCR Status:** | |
| **Local Status:** | SZD | | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | | **Status Date:** | 01/23/13 |
| **Date Released:** | \*\*/\*\*/\*\* | | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | | **Amt Recovered:** | $0.00 |
| **Released To:** | | | **Custody:** | \*\*:\*\*:\*\* \*\*/\*\*/\*\* |
| **Reason:** | | | | |
| **Comments:** | | | | |
| **Property Number:** | 14726 | | | |
| **Item:** | Cellular Phone | | **Owner Applied Nmbr:** | |

| | | | | |
|---|---|---|---|---|
| **Brand:** | LG | | **Model:** | |
| **Year:** | 0 | | **Quantity:** | 1 |
| **Meas:** | EA | | **Serial Nmbr:** | |
| **Total Value:** | $1.00 | | **Color:** | BLK |
| **Owner:** | Gorman Straughn Samuel 205134 | | | |
| **Agency:** | ELSO Elko County Sheriffs Office | | **Tag Number:** | DF#25 |
| **Accum Amt Recov:** | $0.00 | | **Officer:** | Fisher D J |
| **UCR:** | OEQ Office-Type Equipment | | **UCR Status:** | |
| **Local Status:** | SZD | | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | | **Status Date:** | 01/23/13 |
| **Date Released:** | \*\*/\*\*/\*\* | | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | | **Amt Recovered:** | $0.00 |
| **Released To:** | | | **Custody:** | \*\*:\*\*:\*\* \*\*/\*\*/\*\* |
| **Reason:** | | | | |
| **Comments:** | | | | |
| **Property Number:** | 14727 | | | |
| **Item:** | GPS | | **Owner Applied Nmbr:** | |

| | | | | |
|---|---|---|---|---|
| **Brand:** | TomTom | | **Model:** | |
| **Year:** | 0 | | **Quantity:** | 1 |
| **Meas:** | EA | | **Serial Nmbr:** | |
| **Total Value:** | $1.00 | | **Color:** | SIL |
| **Owner:** | Gorman Straughn Samuel 205134 | | | |
| **Agency:** | ELSO Elko County Sheriffs Office | | **Tag Number:** | DF#26 |
| **Accum Amt Recov:** | $0.00 | | **Officer:** | Fisher D J |

| | | | |
|---|---|---|---|
| **UCR:** | OEQ Office-Type Equipment | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $0.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** | 14728 | | |
| **Item:** | Cellular Phone | **Owner Applied Nmbr:** | |

| | | | |
|---|---|---|---|
| **Brand:** | Casio | **Model:** | |
| **Year:** | 0 | **Quantity:** | 1 |
| **Meas:** | EA | **Serial Nmbr:** | |
| **Total Value:** | $1.00 | **Color:** | BLU |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#27 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | OEQ Office-Type Equipment | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $0.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** | 14730 | | |
| **Item:** | Drug | **Owner Applied Nmbr:** | |

| | | | |
|---|---|---|---|
| **Brand:** | Capsules | **Model:** | |
| **Year:** | 0 | **Quantity:** | 10 |
| **Meas:** | EA | **Serial Nmbr:** | |
| **Total Value:** | $1.00 | **Color:** | BLU |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#28 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | DNP Drug/Narc, Other Drugs | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $0.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |

16:36:30 01/25/13

| | |
|---|---|
| **Reason:** | |
| **Comments:** | |
| **Property Number:** 14731 | |
| **Item:** Drug | **Owner Applied Nmbr:** |

| | | | |
|---|---|---|---|
| **Brand:** | inhaler | **Model:** | |
| **Year:** | 0 | **Quantity:** | 1 |
| **Meas:** | EA | **Serial Nmbr:** | |
| **Total Value:** | $1.00 | **Color:** | |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#29 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | DNP Drug/Narc, Other Drugs | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $0.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** | 14674 | | |
| **Item:** | Cash | **Owner Applied Nmbr:** | |

| | | | |
|---|---|---|---|
| **Brand:** | US Currency | **Model:** | |
| **Year:** | 0 | **Quantity:** | |
| **Meas:** | XX | **Serial Nmbr:** | |
| **Total Value:** | $3,250.00 | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#1 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | NEG Negotiable Instruments | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $3,250.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** | 14675 | | |
| **Item:** | Cash | **Owner Applied Nmbr:** | |

| | | | |
|---|---|---|---|
| **Brand:** | US Currency | **Model:** | |

16:36:30 01/25/13

|  |  |  |  |
|---|---|---|---|
| **Year:** | 0 | **Quantity:** | |
| **Meas:** | XX | **Serial Nmbr:** | |
| **Total Value:** | $4,080.00 | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#2 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | NEG Negotiable Instruments | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $4,080.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** | 14676 | | |
| **Item:** | Cash | **Owner Applied Nmbr:** | |

|  |  |  |  |
|---|---|---|---|
| **Brand:** | US Currency | **Model:** | |
| **Year:** | 0 | **Quantity:** | |
| **Meas:** | XX | **Serial Nmbr:** | |
| **Total Value:** | $4,000.00 | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#3 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | NEG Negotiable Instruments | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $4,000.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** | 14677 | | |
| **Item:** | Cash | **Owner Applied Nmbr:** | |

|  |  |  |  |
|---|---|---|---|
| **Brand:** | US Currency | **Model:** | |
| **Year:** | 0 | **Quantity:** | |
| **Meas:** | XX | **Serial Nmbr:** | |
| **Total Value:** | $9,900.00 | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#4 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |

16:36:30 01/25/13

| | | | |
|---|---|---|---|
| **UCR:** NEG Negotiable Instruments | | **UCR Status:** | |
| **Local Status:** SZD | | **Storage Location:** Evidence | |
| **Crime Lab Number:** | | **Status Date:** 01/23/13 | |
| **Date Released:** **/**/** | | **Date Recov/Rcvd:** 01/23/13 | |
| **Released By:** | | **Amt Recovered:** $9,900.00 | |
| **Released To:** | | **Custody:** **:**:** **/**/** | |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** 14678 | | | |
| **Item:** Cash | | **Owner Applied Nmbr:** | |

| | | | |
|---|---|---|---|
| **Brand:** US Currency | | **Model:** | |
| **Year:** 0 | | **Quantity:** | |
| **Meas:** XX | | **Serial Nmbr:** | |
| **Total Value:** $10,000.00 | | **Color:** GRN | |
| **Owner:** Gorman Straughn Samuel 205134 | | | |
| **Agency:** ELSO Elko County Sheriffs Office | | **Tag Number:** DF#5 | |
| **Accum Amt Recov:** $0.00 | | **Officer:** Fisher D J | |
| **UCR:** NEG Negotiable Instruments | | **UCR Status:** | |
| **Local Status:** SZD | | **Storage Location:** Evidence | |
| **Crime Lab Number:** | | **Status Date:** 01/23/13 | |
| **Date Released:** **/**/** | | **Date Recov/Rcvd:** 01/23/13 | |
| **Released By:** | | **Amt Recovered:** $10,000.00 | |
| **Released To:** | | **Custody:** **:**:** **/**/** | |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** 14679 | | | |
| **Item:** Cash | | **Owner Applied Nmbr:** | |

| | | | |
|---|---|---|---|
| **Brand:** US Currency | | **Model:** | |
| **Year:** 0 | | **Quantity:** | |
| **Meas:** XX | | **Serial Nmbr:** | |
| **Total Value:** $10,000.00 | | **Color:** GRN | |
| **Owner:** Gorman Straughn Samuel 205134 | | | |
| **Agency:** ELSO Elko County Sheriffs Office | | **Tag Number:** DF#6 | |
| **Accum Amt Recov:** $0.00 | | **Officer:** Fisher D J | |
| **UCR:** NEG Negotiable Instruments | | **UCR Status:** | |
| **Local Status:** SZD | | **Storage Location:** Evidence | |
| **Crime Lab Number:** | | **Status Date:** 01/23/13 | |
| **Date Released:** **/**/** | | **Date Recov/Rcvd:** 01/23/13 | |
| **Released By:** | | **Amt Recovered:** $10,000.00 | |
| **Released To:** | | **Custody:** **:**:** **/**/** | |

16:36:30 01/25/13

|                      |                                      |                     |              |
|----------------------|--------------------------------------|---------------------|--------------|
| **Reason:**          |                                      |                     |              |
| **Comments:**        |                                      |                     |              |
| **Property Number:** | 14680                                |                     |              |
| **Item:**            | Cash                                 | **Owner Applied Nmbr:** |          |
| **Brand:**           | US Currency                          | **Model:**          |              |
| **Year:**            | 0                                    | **Quantity:**       |              |
| **Meas:**            | XX                                   | **Serial Nmbr:**    |              |
| **Total Value:**     | $10,000.00                           | **Color:**          | GRN          |
| **Owner:**           | Gorman Straughn Samuel 205134        |                     |              |
| **Agency:**          | ELSO Elko County Sheriffs Office     | **Tag Number:**     | DF#7         |
| **Accum Amt Recov:** | $0.00                                | **Officer:**        | Fisher D J   |
| **UCR:**             | NEG Negotiable Instruments           | **UCR Status:**     |              |
| **Local Status:**    | SZD                                  | **Storage Location:** | Evidence   |
| **Crime Lab Number:**|                                      | **Status Date:**    | 01/23/13     |
| **Date Released:**   | **/**/**                             | **Date Recov/Rcvd:**| 01/23/13     |
| **Released By:**     |                                      | **Amt Recovered:**  | $10,000.00   |
| **Released To:**     |                                      | **Custody:**        | **:**:** **/**/** |
| **Reason:**          |                                      |                     |              |
| **Comments:**        |                                      |                     |              |
| **Property Number:** | 14681                                |                     |              |
| **Item:**            | Cash                                 | **Owner Applied Nmbr:** |          |
| **Brand:**           | US Currency                          | **Model:**          |              |
| **Year:**            | 0                                    | **Quantity:**       |              |
| **Meas:**            | XX                                   | **Serial Nmbr:**    |              |
| **Total Value:**     | $10,000.00                           | **Color:**          | GRN          |
| **Owner:**           | Gorman Straughn Samuel 205134        |                     |              |
| **Agency:**          | ELSO Elko County Sheriffs Office     | **Tag Number:**     | DF#8         |
| **Accum Amt Recov:** | $0.00                                | **Officer:**        | Fisher D J   |
| **UCR:**             | NEG Negotiable Instruments           | **UCR Status:**     |              |
| **Local Status:**    | SZD                                  | **Storage Location:** | Evidence   |
| **Crime Lab Number:**|                                      | **Status Date:**    | 01/23/13     |
| **Date Released:**   | **/**/**                             | **Date Recov/Rcvd:**| 01/23/13     |
| **Released By:**     |                                      | **Amt Recovered:**  | $10,000.00   |
| **Released To:**     |                                      | **Custody:**        | **:**:** **/**/** |
| **Reason:**          |                                      |                     |              |
| **Comments:**        |                                      |                     |              |
| **Property Number:** | 14682                                |                     |              |
| **Item:**            | Cash                                 | **Owner Applied Nmbr:** |          |
| **Brand:**           | US Currency                          | **Model:**          |              |

| | | | | |
|---|---|---|---|---|
| **Year:** | 0 | | **Quantity:** | |
| **Meas:** | XX | | **Serial Nmbr:** | |
| **Total Value:** | $10,000.00 | | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | | |
| **Agency:** | ELSO Elko County Sheriffs Office | | **Tag Number:** | DF#9 |
| **Accum Amt Recov:** | $0.00 | | **Officer:** | Fisher D J |
| **UCR:** | NEG Negotiable Instruments | | **UCR Status:** | |
| **Local Status:** | SZD | | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | | **Amt Recovered:** | $10,000.00 |
| **Released To:** | | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | | |
| **Comments:** | | | | |
| **Property Number:** | 14683 | | | |
| **Item:** | Cash | | **Owner Applied Nmbr:** | |

| | | | | |
|---|---|---|---|---|
| **Brand:** | US Currency | | **Model:** | |
| **Year:** | 0 | | **Quantity:** | |
| **Meas:** | XX | | **Serial Nmbr:** | |
| **Total Value:** | $10,000.00 | | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | | |
| **Agency:** | ELSO Elko County Sheriffs Office | | **Tag Number:** | DF#10 |
| **Accum Amt Recov:** | $0.00 | | **Officer:** | Fisher D J |
| **UCR:** | NEG Negotiable Instruments | | **UCR Status:** | |
| **Local Status:** | SZD | | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | | **Amt Recovered:** | $10,000.00 |
| **Released To:** | | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | | |
| **Comments:** | | | | |
| **Property Number:** | 14684 | | | |
| **Item:** | Cash | | **Owner Applied Nmbr:** | |

| | | | | |
|---|---|---|---|---|
| **Brand:** | US Currency | | **Model:** | |
| **Year:** | 0 | | **Quantity:** | |
| **Meas:** | XX | | **Serial Nmbr:** | |
| **Total Value:** | $10,000.00 | | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | | |
| **Agency:** | ELSO Elko County Sheriffs Office | | **Tag Number:** | DF#11 |
| **Accum Amt Recov:** | $0.00 | | **Officer:** | Fisher D J |

16:36:30 01/25/13

| | | | |
|---|---|---|---|
| **UCR:** NEG Negotiable Instruments | | **UCR Status:** | |
| **Local Status:** SZD | | **Storage Location:** Evidence | |
| **Crime Lab Number:** | | **Status Date:** 01/23/13 | |
| **Date Released:** **/**/** | | **Date Recov/Rcvd:** 01/23/13 | |
| **Released By:** | | **Amt Recovered:** $10,000.00 | |
| **Released To:** | | **Custody:** **:**:** **/**/** | |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** 14685 | | | |
| **Item:** Cash | | **Owner Applied Nmbr:** | |

| | |
|---|---|
| **Brand:** US Currency | **Model:** |
| **Year:** 0 | **Quantity:** |
| **Meas:** XX | **Serial Nmbr:** |
| **Total Value:** $13,000.00 | **Color:** GRN |
| **Owner:** Gorman Straughn Samuel 205134 | |
| **Agency:** ELSO Elko County Sheriffs Office | **Tag Number:** DF#12 |
| **Accum Amt Recov:** $0.00 | **Officer:** Fisher D J |
| **UCR:** NEG Negotiable Instruments | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** **/**/** | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $13,000.00 |
| **Released To:** | **Custody:** **:**:** **/**/** |
| **Reason:** | |
| **Comments:** | |
| **Property Number:** 14686 | |
| **Item:** Cash | **Owner Applied Nmbr:** |

| | |
|---|---|
| **Brand:** US Currency | **Model:** |
| **Year:** 0 | **Quantity:** |
| **Meas:** XX | **Serial Nmbr:** |
| **Total Value:** $10,000.00 | **Color:** GRN |
| **Owner:** Gorman Straughn Samuel 205134 | |
| **Agency:** ELSO Elko County Sheriffs Office | **Tag Number:** DF#13 |
| **Accum Amt Recov:** $0.00 | **Officer:** Fisher D J |
| **UCR:** NEG Negotiable Instruments | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** **/**/** | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $10,000.00 |
| **Released To:** | **Custody:** **:**:** **/**/** |

16:36:30 01/25/13

|  |  |
|---|---|
| **Reason:** | |
| **Comments:** | |
| **Property Number:** 14687 | |
| **Item:** Cash | **Owner Applied Nmbr:** |
| | |
| **Brand:** US Currency | **Model:** |
| **Year:** 0 | **Quantity:** |
| **Meas:** XX | **Serial Nmbr:** |
| **Total Value:** $11,960.00 | **Color:** GRN |
| **Owner:** Gorman Straughn Samuel 205134 | |
| **Agency:** ELSO Elko County Sheriffs Office | **Tag Number:** DF#14 |
| **Accum Amt Recov:** $0.00 | **Officer:** Fisher D J |
| **UCR:** NEG Negotiable Instruments | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** **/**/** | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $11,960.00 |
| **Released To:** | **Custody:** **:**:** **/**/** |
| **Reason:** | |
| **Comments:** | |
| **Property Number:** 14688 | |
| **Item:** Cash | **Owner Applied Nmbr:** |
| | |
| **Brand:** US Currency | **Model:** |
| **Year:** 0 | **Quantity:** |
| **Meas:** XX | **Serial Nmbr:** |
| **Total Value:** $9,920.00 | **Color:** GRN |
| **Owner:** Gorman Straughn Samuel 205134 | |
| **Agency:** ELSO Elko County Sheriffs Office | **Tag Number:** DF#15 |
| **Accum Amt Recov:** $0.00 | **Officer:** Fisher D J |
| **UCR:** NEG Negotiable Instruments | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** **/**/** | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $9,920.00 |
| **Released To:** | **Custody:** **:**:** **/**/** |
| **Reason:** | |
| **Comments:** | |
| **Property Number:** 14689 | |
| **Item:** Cash | **Owner Applied Nmbr:** |
| | |
| **Brand:** US Currency | **Model:** |

|  |  |  |  |
|---|---|---|---|
| **Year:** | 0 | **Quantity:** | |
| **Meas:** | XX | **Serial Nmbr:** | |
| **Total Value:** | $10,000.00 | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#16 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | NEG Negotiable Instruments | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $10,000.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** | 14690 | | |
| **Item:** | Cash | **Owner Applied Nmbr:** | |

|  |  |  |  |
|---|---|---|---|
| **Brand:** | US Currency | **Model:** | |
| **Year:** | 0 | **Quantity:** | |
| **Meas:** | XX | **Serial Nmbr:** | |
| **Total Value:** | $1,880.00 | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#17 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | NEG Negotiable Instruments | **UCR Status:** | |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** | | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** | | **Amt Recovered:** | $1,880.00 |
| **Released To:** | | **Custody:** | **:**:** **/**/** |
| **Reason:** | | | |
| **Comments:** | | | |
| **Property Number:** | 14691 | | |
| **Item:** | Cash | **Owner Applied Nmbr:** | |

|  |  |  |  |
|---|---|---|---|
| **Brand:** | US Currency | **Model:** | |
| **Year:** | 0 | **Quantity:** | |
| **Meas:** | XX | **Serial Nmbr:** | |
| **Total Value:** | $2,000.00 | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 | | |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#18 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |

|  |  |
|---|---|
| **UCR:** NEG Negotiable Instruments | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** \*\*/\*\*/\*\* | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $2,000.00 |
| **Released To:** | **Custody:** \*\*:\*\*:\*\* \*\*/\*\*/\*\* |
| **Reason:** | |
| **Comments:** | |
| **Property Number:** 14692 | |
| **Item:** Cash | **Owner Applied Nmbr:** |

|  |  |
|---|---|
| **Brand:** US Currency | **Model:** |
| **Year:** 0 | **Quantity:** |
| **Meas:** XX | **Serial Nmbr:** |
| **Total Value:** $5,060.00 | **Color:** GRN |
| **Owner:** Gorman Straughn Samuel 205134 | |
| **Agency:** ELSO Elko County Sheriffs Office | **Tag Number:** DF#19 |
| **Accum Amt Recov:** $0.00 | **Officer:** Fisher D J |
| **UCR:** NEG Negotiable Instruments | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** \*\*/\*\*/\*\* | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $5,060.00 |
| **Released To:** | **Custody:** \*\*:\*\*:\*\* \*\*/\*\*/\*\* |
| **Reason:** | |
| **Comments:** | |
| **Property Number:** 14693 | |
| **Item:** Cash | **Owner Applied Nmbr:** |

|  |  |
|---|---|
| **Brand:** US Currency | **Model:** |
| **Year:** 0 | **Quantity:** |
| **Meas:** XX | **Serial Nmbr:** |
| **Total Value:** $5,020.00 | **Color:** GRN |
| **Owner:** Gorman Straughn Samuel 205134 | |
| **Agency:** ELSO Elko County Sheriffs Office | **Tag Number:** DF#20 |
| **Accum Amt Recov:** $0.00 | **Officer:** Fisher D J |
| **UCR:** NEG Negotiable Instruments | **UCR Status:** |
| **Local Status:** SZD | **Storage Location:** Evidence |
| **Crime Lab Number:** | **Status Date:** 01/23/13 |
| **Date Released:** \*\*/\*\*/\*\* | **Date Recov/Rcvd:** 01/23/13 |
| **Released By:** | **Amt Recovered:** $5,020.00 |
| **Released To:** | **Custody:** \*\*:\*\*:\*\* \*\*/\*\*/\*\* |

16:36:30 01/25/13

|  |  |  |  |
|---|---|---|---|
| **Reason:** |  |  |  |
| **Comments:** |  |  |  |
| **Property Number:** | 14694 |  |  |
| **Item:** | Cash | **Owner Applied Nmbr:** |  |
|  |  |  |  |
| **Brand:** | US Currency | **Model:** |  |
| **Year:** | 0 | **Quantity:** |  |
| **Meas:** | XX | **Serial Nmbr:** |  |
| **Total Value:** | $5,000.00 | **Color:** | GRN |
| **Owner:** | Gorman Straughn Samuel 205134 |  |  |
| **Agency:** | ELSO Elko County Sheriffs Office | **Tag Number:** | DF#21 |
| **Accum Amt Recov:** | $0.00 | **Officer:** | Fisher D J |
| **UCR:** | NEG Negotiable Instruments | **UCR Status:** |  |
| **Local Status:** | SZD | **Storage Location:** | Evidence |
| **Crime Lab Number:** |  | **Status Date:** | 01/23/13 |
| **Date Released:** | **/**/** | **Date Recov/Rcvd:** | 01/23/13 |
| **Released By:** |  | **Amt Recovered:** | $5,000.00 |
| **Released To:** |  | **Custody:** | **:**:** **/**/** |
| **Reason:** |  |  |  |
| **Comments:** |  |  |  |

16:36:30 01/25/13

## Name Involvements:

Suspect / Driver205134
        :

| | | | | | |
|---|---|---|---|---|---|
| **Last:** | Gorman | **First:** | Straughn | **Mid:** | Samuel |
| **DOB:** | 10/30/81 | **Dr Lic:** | 1238348 | **Address:** | 104 Sailor LN |
| **Race:** | W        **Sex:** M | **Phone:** | ( ) - | **City:** | Milton, DE 19968 |