UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 3:13-CV-00324-LRH-VPC |
| v. | |
| $167,070.00 IN UNITED STATES CURRENCY, | ORDER |
| Defendant. | |
| STRAUGHN SAMUEL GORMAN, | |
| Claimant. | |

This is a civil forfeiture action. Before the Court is the United States' Motion for Summary Judgment. Doc. #11.¹ Claimant Straughn Samuel Gorman ("Gorman") filed a Response (Doc. #19), to which the United States replied (Doc. #22). Also before the Court is Gorman's Motion to Suppress Evidence Pursuant to Supplemental Rule G(8). Doc. #18. The United States filed an Opposition (Doc. #24), to which Gorman replied (Doc. #27).

**I.     Facts and Procedural History**

On January 23, 2013, at approximately 9:27 a.m., Nevada Highway Patrol ("NHP") notified Elko County Sheriffs Office ("ECSO") that NHP had stopped Gorman. Doc. #23, Ex. J, p. 4; Doc. #27-1, Request for Admission No. 18. NHP further notified ESCO that the NHP trooper was

---
¹ Refers to the Court's docket number.

1  releasing Gorman's vehicle, a motorhome, after he was denied consent to search. *Id.* Thereafter, at
2  approximately 10:20 a.m., ECSO Officer Doug Fisher ("Fisher") observed Gorman's motorhome
3  traveling westbound with the driver's side window obstructed by a window curtain which had been
4  pulled forward. Doc. #12 (Fisher Decl.) ¶3. Fisher followed the motorhome and observed the
5  motorhome drift to the right onto the fog line three times and remain on the fog line each time for
6  at least 400 yards. *Id.* Fisher also observed that the rear window of the motorhome was obstructed
7  by blinds or curtains which were closed. *Id.* Based on these observations, Fisher activated the
8  overhead lights on his patrol car in an effort to initiate a stop of the motorhome. *Id.* at ¶4. He
9  remained behind the motorhome with his overhead lights activated for approximately one mile with
10 no apparent effect on the driver of the motorhome. *Id.* Thereafter, Fisher moved to the lane left of
11 the motorhome for an additional mile, keeping the overhead lights activated, with no apparent
12 effect on the driver of the motorhome. *Id.* He then activated his siren in two short bursts, again
13 with no apparent effect on the driver of the motorhome. *Id.* After moving his patrol car forward to
14 the driver's side window and again activating his siren for two short bursts, the driver stopped the
15 motorhome on the side of the road. *Id.*

16       Fisher approached the right side of the motorhome and the driver, Gorman, exited the
17 motorhome. *Id.* at ¶5. Fisher advised Gorman of the reason for the traffic stop and further advised
18 Gorman of the safety issue caused by the obstructed side window. *Id.* at ¶6. Gorman responded
19 that he had been pulled over regarding the same issue less than one hour earlier. *Id.* Gorman also
20 stated that he was traveling to Sacramento to visit his girlfriend and then stated his intention to
21 move to California. *Id.* He also stated that he had a paddleboard company and other beach
22 activities in Maui. *Id.* Fisher returned to his patrol car, at which point the evidentiary record
23 becomes contested. Specifically, the parties dispute whether a records check had been initiated
24 and/or completed by the time the canine assessment began. Approximately 12 minutes into the
25 traffic stop, Fisher initiated a canine sniff of the exterior of the motorhome using drug-detection
26 canine "Euros." *See* Doc. #18, 8:20-21 (Gorman conceding that at approximately 11:45 minutes

2

into the traffic stop, Deputy Fisher initiated a canine sniff of the exterior of the motor home). Euros alerted to the right rear fender and rear cargo area of the motorhome, indicating the presence of the odor of illegal drugs. Doc. #12, ¶7.

Based on the aforementioned circumstances, Fisher applied telephonically for a search warrant from the Justice Court of Elko Township, Elko County, Nevada. *Id.* at ¶10. A warrant to search the motorhome was issued by Elko County Justice of the Peace Brian Boatman at approximately 11:15 am on January 23, 2013. *Id.* A search of the motorhome was conducted with the assistance of Euros. *Id.* at ¶11. During the search, Euros positively alerted to Gorman's backpack, clothes, and blankets, and the overhead storage cabinets above the master bed. *Id.* The search of the interior of the motorhome yielded the discovery of the Defendant currency. *Id.* at ¶12. The search also yielded the discovery of fifteen "pay/owe" sheets, a Google map printout showing driving directions from Milton, Delaware to Garberville, California, a prescription inhaler containing Proventil with a prescription label designating "Ryan Cavalear" as the patient, two large empty canvas duffle-type bags, and a large hard-sided storage "Pelican" case. *Id.* at ¶¶13-16.

On June 17, 2013, the United States filed a Complaint in Forfeiture *In Rem*. Doc. #1. On February 18, 2014, the United States filed the present Motion for Summary Judgment. Doc. #11. Thereafter, Gorman filed the present Motion to Suppress. Doc. #18.

**II.   Legal Standard**

    **A.   Motion to Suppress**

Rule G(8)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions provides that "[i]f the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence." A motion to suppress brought by a claimant in a civil forfeiture proceeding is akin to one brought by a defendant in a criminal case. *See One 1958 Plymouth Sedan v. Pa.*, 380 U.S. 693, 696-702 (1965) (holding that the Fourth Amendment is applicable to forfeiture proceedings); *see also* Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 981(b)(2)(B) (requiring that seizures be made pursuant

3

to a warrant or based upon probable cause and pursuant to a lawful arrest or search).  As such, the exclusionary rule applies in civil forfeiture cases.  *One 1958 Plymouth Sedan*, 380 U.S. at 702; *United States. v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1164 (9th Cir. 2008).  The rule "bars the admission of evidence obtained in violation of the U.S. Constitution, as well as 'fruits of the poisonous tree.'"  *$493,850.00 in U.S. Currency*, 518 F.3d at 1164 (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1395 (9th Cir. 1989)).  "[U]nder the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible . . . ."  *Id.* at 1164-65 (quoting *United States v. Washington*, 490 F.3d 765, 774 (9th Cir. 2007)).

### B. Motion for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).  On an issue as to which the non-moving party has the burden of proof, however, the moving party

can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

**III.    Standing**

    **A.    Standing to Challenge the Lawfulness of the Seizure**

As a preliminary matter, the Court finds that Gorman has standing under the Fourth Amendment to challenge the lawfulness of the seizure. Advisory Committee Notes to Subdivision (8) of Rule G provides:

> Standing to suppress use of seized property as evidence is governed by principles distinct from the principles that govern claim standing. A claimant with standing to contest forfeiture may not have standing to seek suppression. Rule G does not of itself create a basis of suppression standing that does not otherwise exist.

Indeed, the "rights assured by the Fourth Amendment are personal rights, and . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968). While the United States conflates the issues of standing to challenge the lawfulness of the seizure and Article III "claim" standing to challenge the forfeiture action, it does not appear to actually contest Gorman's standing as to the former. The United States does not contest that Gorman had exclusive, owner-authorized

5

possession of the motor home at the time it was stopped, detained, and ultimately searched. Accordingly, the Court finds that Gorman has standing to bring the present Motion to Suppress. *See U.S. v. Portillo*, 633 F.2d 1313, 1316-17 (9th Cir. 1980) (claimant had standing to challenge the propriety of the search where he "had both permission to use his friend's automobile and the keys to the ignition and trunk, with which he could exclude all others, save his friend, the owner).

### B. Standing to Challenge the Forfeiture Action

The Court also finds that Gorman has Article III "claim" standing to challenge the instant forfeiture action. Claimants in a civil forfeiture action can satisfy the case-or-controversy requirement of Article III by showing that they have "'a colorable interest in the property,' which includes an ownership interest or possessory interest." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637-38 (9th Cir. 2012) (quoting *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004) and citing *United States v. $191,910.00*, 16 F.3d 1051, 1057 (9th Cir. 1994), superseded by statute on another ground as stated in *United States v. $80,180.00*, 303 F.3d 1182, 1184 (9th Cir. 2002)). "At the motion to dismiss stage, a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing." *Id.* at 638 (citing *United States v. 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008); *$191,910.00*, 16 F.3d at 1058). However, "a claimant's bare assertion of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary judgment." *Id.* A claimant asserting ownership in the defendant property must also present "'some evidence of ownership' beyond the mere assertion in order to survive a motion for summary judgment." *Id.* (citing *United States v. $81,000.00*, 189 F.3d 28, 35 (1st Cir. 1999); *United States v. $38,570*, 950 F.2d 1108, 1112-13 (5th Cir. 1992)). Where, as here, it is undisputed that the defendant currency was seized from the claimant's possession and the claimant

///

///

///

6

unequivocally asserts an ownership interest therein,[2] the Ninth Circuit has opined that this is sufficient evidence to establish standing at the summary judgment phase. *See id.* at 639-40 (finding that an unequivocal assertion of ownership, combined with the claimant's possession of the currency at the time it was seized, would be enough to establish standing for purposes of a motion for summary judgment); *see also United States v. $148,840.00*, 521 F.3d 1268, 1277 (10th Cir. 2008) ("because [claimant's] assertion of ownership is assumed to be true on this record, and because the currency was indisputably seized from a vehicle that [claimant] was driving, we hold that [claimant] has established constitutional standing at this stage of the litigation"). Accordingly, the Court determines that Gorman has "claim" standing to contest the instant forfeiture action.

**IV.  Discussion**

The authority and limits of the Fourth Amendment's protection against unreasonable searches and seizures apply to investigative stops of vehicles such as the one at issue here. *United States v. Sharpe*, 470 U.S. 675, 682 (1985). In *Terry v. Ohio*, the Supreme Court adopted a dual inquiry for evaluating the reasonableness of an investigative stop. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Specifically, courts are to evaluate "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

Here, Gorman challenges the legality of the initial traffic stop based on Fisher's observed traffic violations, as well as the legality of his "prolonged detention," which he claims exceeded the scope and duration of the purported justification for the initial investigatory traffic stop. First, it is apparent to the Court that there was some communication between NHP and ECSO regarding the earlier stop as Fisher admits that, within an hour prior to stopping the motorhome, he had been advised pursuant to law enforcement communications that the motorhome had been stopped by another law enforcement officer and that the driver had denied a request to search the motorhome

---

[2] Gorman's Verified Claim states that "Claimant is the sole and rightful owner of the entirety of said Defendant property[.]" Doc. #7, ¶2.

7

and was thereafter released.  Doc. #27-1, Ex. 1, Request for Admission No. 18.  Indeed, the circumstances and extent of this stop and communication may bear upon the Court's assessment of the legality of Gorman's detention.  Moreover, the Court is unpersuaded, given the parties' conflicting accounts as to whether a records check had been initiated and/or completed prior to the canine sniff, that Gorman's detention did not exceed that amount of time which was reasonably necessary to investigate and issue a traffic citation.  Nor is the Court able, without review of the video and audio recordings from both stops and testimony from both officers, to determine whether Fisher diligently pursued a means of investigation in conformity with Constitutional requirements.

In light of these issues, the Court finds that an evidentiary hearing is necessary to determine whether the detention at issue was reasonable under the Fourth Amendment.  Additionally, the Court shall deny without prejudice the United States' Motion for Summary Judgment pending resolution of Gorman's Motion to Suppress.

IT IS THEREFORE ORDERED that a ruling on Gorman's Motion to Suppress Evidence Pursuant to Supplemental Rule G(8) (Doc. #18) is DEFERRED pending an evidentiary hearing.

IT IS FURTHER ORDERED that an evidentiary hearing shall be scheduled on Tuesday, October 7, 2014, at 10:00 a.m., in Reno Courtroom 3, before Judge Larry R. Hicks.

IT IS FURTHER ORDERED that the United States' Motion for Summary Judgment (Doc. #11) is DENIED without prejudice.

IT IS SO ORDERED.

DATED this 23rd day of July, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE