1  **MTN**
   GENTILE CRISTALLI MILLER
2  ARMENI & SAVARESE
   MICHAEL V. CRISTALLI
3  Nevada Bar No. 6266
   Email: mcristalli@gentilecristalli.com
4  VINCENT SAVARESE III
   Nevada Bar No. 2467
5  Email: vsavarese@gentilecristalli.com
   410 South Rampart Blvd., Suite 420
6  Las Vegas, Nevada 89145
   Tel: (702) 880-0000
7  Fax: (702) 778-9709
   Attorneys for Claimant, Straughn Samuel Gorman
8

9                        UNITED STATES DISTRICT COURT

10                           DISTRICT OF NEVADA

11  UNITED STATES OF AMERICA,

12                          Plaintiff,          CASE NO. 3:13-CV-00324-LRHVPC

13  vs.

14  167,070.00 IN UNITED STATES CURRENCY,

15                          Defendant.

16  STRAUGHN SAMUEL GORMAN,

17          Claimant/Real Party in Interest.

18

19

20      **CLAIMANT'S STRAUGHN SAMUEL GORMAN'S MOTION FOR
              ATTORNEY'S FEES AND COSTS**
21

22      **CERTIFICATION**:  The undersigned counsel hereby certifies that this Motion is timely

23  filed.

24      COMES NOW the Claimant, Straughn Samuel Gorman, ("Claimant" or "Mr. Gorman"),

25  by and through his attorneys of record, Michael V. Cristalli, Esq., and Vincent Savarese III, Esq.,

26  of the law firm of Gentile Cristalli Miller Armeni & Savarese, PLLC, and hereby files the instant

27  Motion for Attorney's Fees and Costs pursuant to 28 USC Section 2465(b)(1)(A), FRCP 54(d)

28  and Local Rule 54-16.

                                        1

1    This Motion is based upon the following Memorandum of Points and Authorities, the

2    attached exhibits, the pleadings and papers on file herein, and any oral argument this Court may

3    require.

4    DATED this 26th day of June, 2015.

5                                              GENTILE CRISTALLI MILLER
                                               ARMENI & SAVARESE
6

7

8                                              MICHAEL V. CRISTALLI
                                               Nevada Bar No. 6266
9                                              VINCENT SAVARESE III
                                               Nevada Bar No. 2467
10                                             410 S. Rampart Blvd., Suite 420
                                               Las Vegas, Nevada  89145
11                                             Tel: (702) 880-0000
                                               Attorneys   for   Claimant,   Straughn   Samuel
12                                             Gorman

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## **INTRODUCTION**

FRCP 54(d)(2)(A) provides that "[a] claim for attorney's fees . . . must be made by motion." Pursuant to FRCP 54(d)(2)(B)(i), this Motion is timely filed. Pursuant to FRCP 54(d)(2)(B)(ii), Claimant Gorman respectfully submits that the Order entitling Claimant to an award of attorney's fees is this Court's Order of June 12, 2015 (Doc. #72), granting Claimant's Motion to Suppress (Doc. #18) and ordering the return of the Defendant currency to Claimant within thirty (30) days of the entry of that Order; and finding that, for purposes of an award of attorney's fees, "Gorman is undoubtedly the successful party here." *Id.* at p. 27, l. 8. Pursuant to FRCP 54(d)(2)(B)(ii), Claimant submits that the statute entitling him to the award is the Civil Forfeiture Reform Act ("CAFRA"), 28 U.S.C. Section 2465(b)(1)(A); providing that a successful claimant in a civil forfeiture action can recover from the United States "reasonable attorney fees and other litigation costs reasonably incurred by the claimant." *See* Order of June 12, 2015 (Doc. #72) p. 27, ll. 2-12. The attorney's fees and litigation costs reasonably incurred and actually paid by Claimant Gorman in this case are set forth in this Motion and the exhibits appended hereto.

After significant, extensive briefing and a two day evidentiary hearing, this Court held that the search of the motor home driven by Mr. Gorman and the seizure therefrom of the Defendant currency were undertaken in violation of the Fourth Amendment to the United States Constitution; ordered the suppression of evidence derived therefrom; and ordered the return of the Defendant currency to Claimant within thirty (30) days of the date of that Order. Order of June 12, 2015 (Doc. #72) (granting Claimant's Motion to Suppress) (Doc. #18). The Court further made the factual determination that Mr. Gorman was the successful claimant. Therefore, pursuant to the Civil Forfeiture Reform Act ("CAFRA"), Mr. Gorman is **entitled** to recover the reasonable attorney's fees and costs of litigation he incurred with respect to his claim.

After years of litigation necessitated by the failure of attempted settlement negotiations with the government, and Mr. Gorman's earnest efforts to discover, uncover, and prove the

3

1  deliberate and calculated scheme of officers of the Elko County Sheriff's Office and Nevada

2  Highway Patrol to effectuate a dog sniff of Claimant's vehicle in violation of the United States

3  Constitution, Mr. Gorman prevailed at the cost of $148,317.00, exclusive of the fees associated

4  with the present Motion. The fees represent the reasonable time and effort spent by Mr.

5  Gorman's counsel at reasonable billing rates.

6      Therefore, Mr. Gorman requests that the Court enter an award of attorneys' fees in the

7  amount of $148,317.00 plus an additional award of $4,685.25 in attorney's fees in preparing this

8  Motion (which amounts to 9.5 hours spent by Mr. Savarese and 6.7 hours spent by Mr.

9  Ciciliano), together with an Order awarding the Bill of Costs, submitted concurrently herewith.

10                                          **II.**

11                                     **ARGUMENT**

12  **A.    Mr. Gorman Has Been Found To Be The Prevailing Party And Is Entitled To An
        Award Of Attorneys' Fees.**

13      The Civil Forfeiture Reform Act ("CAFRA") provides that a successful claimant in a

14  civil forfeiture action is entitled to recover from the United States "reasonable attorney's fees and

15  other litigation costs reasonably incurred by the claimant." 28 USC 2465(1)(A). The Court has

16  already determined that Mr. Gorman is the successful party and is entitled to recover his fees.

17  [Doc. #72, at p.27]. Therefore, all that is left to determine is the amount of Mr. Gorman's

18  reasonable attorney's fees.

19  **B.    Mr. Gorman Reasonably Incurred $148,317 In Legal Fees, Plus Fees Associated
        With The Preparation Of This Motion.**

20

21      "District courts must calculate awards for attorneys' fees using the "lodestar" method."

22  Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1152 (9th Cir. 2001) (internal citations omitted).

23  The Loadstar method applies in the CAFRA context as well. United States v. $186,416.00 in

24  U.S. Currency, 642 F.3d 753, 755 (9th Cir. 2011). "To determine reasonable attorney's fees, the

25  court calculates the "lodestar figure" by multiplying the hours reasonably spent on the case by a

26  reasonable hourly rate." Trustees of N. Nevada Operating Engineers Health & Welfare Trust

27  Fund v. Mach 4 Const., LLC, No. 3:08-CV-00578-LRH, 2013 WL 5276590, at *1-2 (D. Nev.

28  Sept. 18, 2013)(citing Fischer v. SJB–P.D. Inc., 214 F.3d 1115, 1119 (9th Cir.2000)); Ferland,

                                              4

1  244 F.3d at 1152. The lodestar figure is a presumptively reasonable award. Ferland, 244 F.3d at

2  1152. (citing Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1046 (9th Cir.2000)).

3  **1. The respective billing rates of Mr. Gorman's attorneys' provide for the appropriate "lodestar figure."**

An attorney's usual billing rate is presumptively the reasonable rate, so long as it is

commensurate with lawyers in the community of comparable skill, experience, and reputation.

Covad Communs. Co. v. Revonet, Inc., 267 F.R.D. 14 (D.D.C. 2010). Likewise, "quality of

representation is generally considered at the lodestar stage in determining what is a reasonable

hourly rate." Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1046 (9th Cir. 2000). As

such, the actual fee agreement is relevant when determining a "reasonable fee under the lodestar

approach." $186,416.00 in U.S. Currency, 642 F.3d at 755.

Mr. Gorman was primarily represented by three attorney's Michael Cristalli, Esq.,

Vincent Savarese III, Esq., and Dylan T. Ciciliano, Esq.[1]

Mr. Cristalli is a partner at Gentile Cristalli Miller Armeni & Savarese PLLC

("GCMAS") and has practiced law for 18 years. (Savarese Declaration in Support of Claimant's

Motion for Attorney's Fees and Costs, at par. 6). During the majority of the above-captioned

case, Mr. Cristalli was a shareholder at Gordon Silver. (Id.). His practice includes government

investigations, commercial litigation, and criminal defense. (Id.). Mr. Cristalli has handled some

of Clark County's highest profile criminal defense cases and has a reputation in the community

for being a knowledgeable and effective attorney. (Id.). He has been an attorney for 20 years.

(Savarese Declaration par. 6)  He is an adjunct professor at UNLV's Boyd School of law. (Id.).

Mr. Cristalli's hourly rate during the entirety of the case was $510/hr. (Id.). Mr. Cristalli billed

Mr. Gorman at a rate of $510/hr. (Id.). Mr. Cristalli's billing rate of $510 per hour is

commensurate with attorneys who have practiced for a similar time with similar experience,

skill, and professional reputation. (Id.).

---

[1] Mr. Gabriel Blumberg, Esq, also provided limited assistance on the case. (Savarese Declaration in Support of Claimant's Motion for Attorney's Fees and Costs at par. 7. Mr. Blumberg is a graduate of Duke Law School and has practiced law for four years. (Id.). His focus is on commercial litigation. (Id.). During this litigation, he was an associate at Gordon Silver and he is now of counsel at Dickenson-Wright. (Id.).

1    Mr. Savarese is also a partner at GCMAS and was previously senior counsel at Gordon

2 Silver. (*Id*. at par. 4).  Since being admitted to the Massachusetts bar in 1979 and the Nevada bar

3 in 1984, Mr. Savarese's practice has focused on criminal defense and constitutional litigation

4 primarily in cases involving sophisticated Fourth and First Amendment issues. (*Id*.). He has

5 practiced law in these areas for over 35 years. (*Id*.). Mr. Savarese has a been a member of the

6 National Association of Criminal Defense Lawyers ("NACDL") since 1980 and often lectures on

7 Fourth Amendment search and seizure law at NACDL seminars, and enjoys a long-standing

8 reputation in the legal community for particular proficiency in the area of Fourth Amendment

9 litigation. (*Id*.). He is a Founding Member of the Nevada Attorneys for Criminal Justice. (*Id*.). In

10 2013, his billing rate was $285/hr. From January 1, 2014 to February 1, 2015, his billing rate was

11 $330/hr, and from February 1, 2015 his billing rate was $400/hr. (*Id*.). Since joining GCMAS in

12 April 2015, his billing rate has been $450/hr. (*Id*.). Over that time, and factoring in the hours he

13 billed to Mr. Gorman's case, his average billing rate was $334.50/hr. (*Id*.). His billing rates are

14 less than the commensurate rate for attorneys with his years of practice and with similarly

15 significant experience in litigating sophisticated Fourth Amendment issues. (*Id*.).

16    Mr. Ciciliano is an associate attorney at Garman Turner Gordon, LLP and was previously

17 an associate attorney at Gordon Silver. (*Id*. at par. 5). Mr. Ciciliano is a fourth year attorney that

18 practices primarily corporate litigation. (*Id*.). Mr. Ciciliano's ordinary billing rate during this

19 case was $225/hour. (*Id*.). Mr. Ciciliano's ordinary billing rate is a commensurate rate for

20 attorneys with four years of experience. (*Id*.).

21    All but a few hours of this case were billed by the attorneys while they were working at

22 Gordon Silver. Gordon Silver employed a team method for handing cases, capitalizing on each

23 of the team members' relative strengths and abilities to keep costs reasonable. (*Id*. at par. 9). In

24 this matter, Mr. Savarese handled the majority of the legal issues involving the Fourth

25 Amendment violations found by this Court as he has extensive Fourth Amendment experience,

26 while Mr. Ciciliano handled more of the civil litigation aspects of the matter including summary

27 judgment and discovery. (Savarese Declaration at par. 9). More basic tasks were given to Mr.

28 Ciciliano who had a lower billing rate to help keep fees and costs low. (*Id*.).  Certain time was

6

1    also written off, "No Charged," or not charged at all, not because Mr. Gorman did not receive

2    value but as an accommodation to Mr. Gorman or to avoid redundant charges. (Savarese

3    Declaration at par. 9).

4          Based on their respective billing rates and reputation in the community, the Lodestar

5    figure for Mr. Gorman's counsel should be as follows:

6          Mr. Cristalli: $510/hr
           Mr. Savarese: $334.50/hr
7          Mr. Ciciliano: $225/hr
           Mr. Blumberg: $225/hr.
8
    (*Id.* at par. 12). With the exception of Mr. Savarese's lodestar figure, all of the attorneys' rates
9
    are their standard billing rate. Because his rate was upwardly adjusted several times during the
10
    pendency of this matter, an appropriate Lodestar figure for his time is the average billed rate or
11
    $334.50. (*Id.*).
12
          **2.  Mr. Gorman's counsel spent the following reasonable hours successfully pursuing**
13        **Mr. Gorman's claim.**

14         Mr. Gorman's counsel spent the following reasonable hours successfully pursuing Mr.

15   Gorman's claim, in addition to 16.2 hours researching and drafting the present Motion and

16   preparing the exhibits hereto:

17
|                 | Vincent Savarese | Dylan Ciciliano | Michael Cristalli | Gabe Blumberg |
|-----------------|------------------|-----------------|-------------------|---------------|
| Hours           | 352.7            | 134.5           | 26.9              | 4.6           |
| Non-Billed Time | 33.2             | 15.9            | 0                 | 0             |
| Value           | $ 106,878.00     | $ 26,685.00     | $ 13,719.00       | $ 1,035.00    |

18

19

20   (Savarese Declaration at par. 10). (See True and correct copies of invoices attached hereto as

21   Exhibit 1-A and 1-B).

22         In pursuing his claim, Mr. Gorman's counsel had to (successfully) negotiate for the return

23   of the motorhome Mr. Gorman was driving (which, together with the Defendant currency, was

24   initially seized by local authorities, who left Mr. Gorman without any of his assets or any means

25   of transportation). Mr. Gorman's counsel also had to answer the Government's petition to forfeit

26   the Defendant currency, and bring a verified claim to challenge the Government's endeavor to

27   forfeit that property. Mr. Gorman's counsel successfully defended against the Government's

28

summary judgment motion, and Mr. Gorman affirmatively sought the suppression of evidence seized from his motor home, an endeavor on which he ultimately prevailed.  The original Motion to Suppress and supporting memorandum of points and authorities was followed by a Reply memorandum of points and authorities in response to the Government's Opposition and several extensive supplemental and further responsive memoranda filed pursuant to the order of the Court.

Mr. Gorman also engaged in appropriate discovery. He issued written discovery and took the depositions of the Elko County Sherriff's Deputy and Nevada Highway Trooper who conducted the consecutive stops and detentions of Mr. Gorman and the ultimate search of Mr. Gorman's motor home found to have been unconstitutional by this Court. In order to take these depositions, which – as the Court has found – were particularly instrumental in adducing the critical operative facts relevant to the Court's determination of the Motion to Suppress in this case, Mr. Gorman had to defend against the Government's motion to quash discovery measures, a motion that was initially successful before the Magistrate Judge, but was ultimately rejected by this Court.

Mr. Gorman's counsel also had to prepare for and conduct a two-day evidentiary hearing before the Court on the Motion to Suppress and prepared supplemental and further responsive briefing in lieu of closing arguments. At the court's request, Mr. Gorman submitted further briefing to the Court relating to the recent United States Supreme Court Decision in *Rodriguez v. United States.*

While Counsel's redacted billing entries are attached hereto as Exhibits 1-A and 1-B, Counsel's time can be more generally summarized as follows, as established by the detailed itemization attached hereto as Exhibit 1-C:

| | | Vincent Savarese | Dylan Ciciliano | Michael Cristalli | Gabe Blumberg |
|---|---|---|---|---|---|
| **Client Meetings** | Hours | 5.2 | 2.3 | 4.4 | 0 |
| | Write-Off | 0 | 0 | 0 | 0 |
| | Value | $ 1,626.00 | $ 517.50 | $ 2,244.00 | $ - |
| **Communications with Elko County District Attorney** | Hours | 0.6 | 0 | 3.4 | 0 |
| | Write-Off | 0 | 0 | 0 | 0 |
| | Value | $ 171.00 | $ - | $ 1,734.00 | $ - |
| **Communications with the AUSA** | Hours | 4 | 2.3 | 1 | 0 |
| | Write=-Off | 0 | 0 | 0 | 0 |
| | Value | $ 1,239.00 | $ 517.50 | $ 510.00 | $ - |
| **Interoffice Communications** | Hours | 2.6 | 3.9 | 0.8 | 0 |
| | Write -Off | 0 | 0.6 | 0 | 0 |
| | Value | $ 918.00 | $ 742.50 | $ 408.00 | $ - |
| **Miscellaneous Research** | Hours | 21.9 | 4.1 | 3.5 | 0 |
| | Write -Off | 3.1 | 0 | 0 | 0 |
| | Value | $ 6,341.00 | $ 922.50 | $ 1,785.00 | $ - |
| **Review Case File** | Hours | 0 | 0 | 6.1 | 0 |
| | Write -Off | 0 | 0 | 0 | 0 |
| | Value | $ - | $ - | $ 3,111.00 | $ - |
| **Pleadings** | Hours | 245.3 | 51.5 | 3.6 | 4.6 |
| | Write-Off | 18.4 | 1.8 | 0 | 0 |
| | Value | $ 76,852.00 | $ 11,182.50 | $ 1,836.00 | $ 1,035.00 |
| *Verified Answer/Claim* | Hours | 9.7 | 0 | 1.2 | 0 |
| | Value | $ 2,764.50 | | $ 612.00 | $ - |
| *Summary Judgment* | Hours | 1.1 | 13.5 | 1.5 | 0 |
| | Value | $ 363.00 | $ 3,037.50 | $ 765.00 | $ - |
| *Motion to Suppress* | Hours | 145.5 | 17.6 | 0 | 0 |
| | Value | $ 46,831.50 | $ 3,960.00 | $ - | $ - |
| *Motion to Quash* | Hours | 1.6 | 17.9 | 0.9 | 4.6 |
| | Write-Off | | 1 | | |
| | Value | $ 528.00 | $ 3,802.50 | $ 459.00 | $ 1,035.00 |
| *Supplemental Briefing* | Hours | 87.4 | 0.8 | 0 | 0 |
| | Write -Off | 18.4 | 0.8 | 0 | 0 |
| | Value | $ 26,365.00 | $ - | $ - | $ - |
| *Miscellaneous Pleadings* | Hours | 0 | 1.7 | 0 | 0 |
| | Value | $ - | $ 382.50 | $ - | $ - |
| **Discovery** | Hours | 38.7 | 39 | 4.1 | 0 |
| | Write-Off | 6.6 | 11 | 0 | 0 |
| | Value | $ 10,062.00 | $ 6,300.00 | $ 2,091.00 | $ - |
| *General Discovery* | Hours | 27.3 | 14.1 | 4.1 | 0 |
| | Value | $ 8,478.00 | $ 3,172.50 | $ 2,091.00 | $ - |
| *Depositions* | Hours | 11.4 | 24.9 | 0 | 0 |
| | Write -Off | 6.6 | 11 | | 0 |
| | Value | $ 1,584.00 | $ 3,127.50 | $ - | $ - |
| **Evidentiary Hearing** | Hours | 34.4 | 31.4 | 0 | 0 |
| | Write -Off | 5.1 | 2.5 | 0 | 0 |
| | Value | $ 9,669.00 | $ 6,502.50 | $ - | $ - |

Thus, Mr. Gorman incurred **$148,317** in fees related to reasonable legal services that were neither redundant nor unnecessary. Furthermore, the fees are objectively reasonable when considering the following factors provided in Local Rule 54-16.

**C. The Award Requested Is Justified Pursuant To The Factors Set Forth In Local Rule 54-16**

LR-54-16 of the Local Rules of the United States District Court for the District of Nevada provides:

> "LR 54-16. MOTIONS FOR ATTORNEY'S FEES. (a) Time for Filing. When a party is entitled to move for attorney's fees, such motion shall be filed with the Court and served within fourteen (14) days after entry of the final judgment or other order disposing of the action. (b) Content of Motions. Unless otherwise ordered by the Court, a motion for attorney's fees must, in addition to those matters required by Fed. R. Civ. P. 54(d)(2)(B), include the following: (1) A reasonable itemization and description of the work performed; (2) An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR 54-1 through 54-15; (3) A brief summary of: (A) The results obtained and the amount involved; (B) The time and labor required; (C) The novelty and difficulty of the questions involved; (D) The skill requisite to perform the legal service properly; (E) The preclusion of other employment by the attorney due to acceptance of the case; (F) The customary fee; (G) Whether the fee is fixed or contingent; (H) The time limitations imposed by the client or the circumstances; 51 | Page (I) The experience, reputation, and ability of the attorney(s); (J) The undesirability of the case, if any; (K) The nature and length of the professional relationship with the client; (L) Awards in similar cases; and, (4) Such other information as the Court may direct. (c) Attorney Affidavit. Each motion must be accompanied by an affidavit from the attorney responsible for the billings in the case authenticating the information contained in the motion and confirming that the bill has been reviewed and edited and that the fees and costs charged are reasonable. (d) Failure to provide the information required by LR 54-16(b) and (c) in a motion for attorneys' fees constitutes a consent to the denial of the motion. (e) Opposition. If no opposition is filed, the Court may grant the motion. If an opposition is filed, it shall set forth the specific charges that are disputed and state with reasonable particularity the basis for such opposition. The opposition shall further include affidavits to support any contested fact. (f) Hearing. If either party wishes to examine the affiant, such party must specifically make such a request in writing. Absent such a request, the Court may decide the motion on the papers or set the matter for evidentiary hearing."

Under the foregoing factors set forth by local rule, the award requested in this case is entirely appropriate.

**1. Reasonable itemization and description of work performed.**

A reasonable itemization and description of the work performed is set forth with particularity *supra* and in the exhibits attached to this Motion.

10

## 2.  Itemization of all costs sought to be charged.

An itemization of all costs sought to be charged is set forth in the Bills of Costs attached hereto.

## 3.  Results obtained and amount involved.

Claimant was victorious in all respects.  The Court has denied the Government's Motion for Summary Judgment; granted Claimant's Motion to Suppress; and has ordered the Government to return the Defendant currency to Claimant forthwith.  As the Court has found, "Gorman is undoubtedly the successful party here."  Order of June 12, 2015 (Doc. #72) p. 27, l. 8.

## 4.  Time and labor required.

The prosecution of Mr. Gorman's claim through to the vindication of his constitutional rights and re-acquisition of the property unlawfully taken from him under color of law has taken considerable time and labor.  (Savarese Declaration at par. 15). That time and labor is detailed *supra* and in the exhibits appended hereto.  That time and labor has also been necessitated by the Government's flat refusal to negotiate a reasonable settlement in this case in lieu of its "take it or leave it" offer to return a very small percentage of the money illegally seized from Mr. Gorman in exchange for a waiver of litigation despite the good faith efforts of Claimant's attorneys.  (*Id.*) It has also been necessitated by the Government's comprehensive resistance to Claimant's ultimately successful efforts to prove the truthful facts underlying the unconstitutional seizures and detentions that led to the manifestly unjustifiable confiscation of Mr. Gorman funds – which the Government has insisted upon disingenuously denying at every turn.   (*Id.*) Extensive discovery measures, extensive legal research, extensive pleading preparation, travel, court proceedings and preparation in anticipation thereof have all been required to get Mr. Gorman's money back in this fight to vindicate his rights in the premises.  (Savarese Declaration at par. 16).

## 5.  Novelty and difficulty of questions involved.

The Fourth Amendment issues implicated in this case were very sophisticated and complex.  (*Id.* at par. 17.) And counsel's responsive legal and factual analysis was novel and

11

1  innovative and had to take into consideration the rather atypical factual scenario at issue. (*Id.*)

2  Here, successive, interrelated, inter-agency vehicle stops were involved, and a detailed

3  development and analysis of the facts underlying and pertaining to those respective intrusions

4  was required under the current body of Fourth Amendment case law, including application of the

5  Supreme Court's most recent case on the subject of prolonged roadside detention to achieve a

6  canine sniff of a vehicle: *Rodriguez v. United States*. (Savarese Declaration at par. 17.)

7  Alternative theories of suppression were thereby developed in Claimant's pleadings involving,

8  on the one hand, a legal analysis of the successive stops and detentions on a linear basis and

9  incorporating traditional principles of taint analysis, and, on the other hand, an analysis of the

10  successive stops as a continuing Fourth Amendment episode. (*Id.*)

11        **6.  Skill requisite to perform the legal service properly.**

12        Counsel respectfully submits that considerable knowledge and skill in litigating Fourth

13  Amendment issues such as those presented in this case, acquired through many years of

14  experience in such matters, was brought to bear by Claimant's attorneys in order to obtain the

15  very favorable results  granted by the Court to Mr. Gorman in the case at bar. (*Id.* at par. 18.)

16  Particular skill and deftness was also demonstrated by Mr. Gorman's counsel in very effectively

17  conducting civil discovery practice and in overcoming the Government's relentless resistance

18  thereto in this matter.  (*Id.*)   Indeed, as the Court has noted in its suppression Order, the

19  Government was not candid and forthcoming about the truthful facts of this case as this Court

20  ultimately found them to be.  (*Id.*) And had it not been for the skillful discovery conducted by

21  Claimant's counsel, Mr. Ciciliano, the Government may well have succeeded in its persistent

22  resistance to the exposure of facts uniquely within the knowledge and control of authorities –

23  facts and circumstances which the Court found were "so obviously relevant to the legal issues

24  before the Court."  Order of June 12, 2015 (Doc. #72) p. 25, ll. 22-23.  Indeed, this Court has

25  specifically observed that "[t]he government's nondisclosure of . . . information . . . is

26  troublesome for many reasons" in this case. *Id.* at p. 25, ll. 21-22.  And the Court has found that

27  the Government did not observe its "duty of candor and fair disclosure to the Court" in this case.

28  *Id.* at p. 26, ll. 20-23.  The Government was sadly mistaken in its presupposition that it could win

1   a classic "war of attrition" against Mr. Gorman by "stonewalling" and bringing to bear superior

2   resources than those possessed by most forfeiture claimants. Here the Government encountered

3   skillful counsel and a resolute and resourceful Claimant who refused to sit still and be

4   victimized. And the time has now come for the Government to make Mr. Gorman whole.

5        **7.  Preclusion of other employment.**

6        This case did not preclude Claimant's counsel from accepting other employment.

7   (Savarese Declaration par. 19.) However, this litigation did consume a considerable amount of

8   counsel's time and attention. (*Id.*) And counsel's labor-intensive diligence here was particularly

9   motivated by a keen awareness that if counsel did not succeed, Mr. Gorman would have

10  essentially "thrown good money after bad" by choosing to fight what proved in the end to have

11  been a very righteous fight against the Government in this case. (*Id.*)

12       **8.  Customary fee.**

13       Counsel charged Mr. Gorman their customary hourly fees for legal services as detailed

14  *supra* and in the exhibits appended to this Motion. (*Id.* at par. 20.)

15       **9.  Whether the fee is fixed or contingent.**

16       As set forth *supra* and in the exhibits appended to this Motion, counsel charged Mr.

17  Gorman a fixed, hourly fee for their work on his behalf in this case. (*Id.* at par. 21.) The

18  attorneys who successfully represented Mr. Gorman in this matter do not work on a contingent

19  fee basis in litigation of this type. (*Id.*)   And contingency fees were contra to the policy of

20  Gordon Silver generally, at which law firm the vast majority of the work was performed by the

21  lawyers for Claimant in this case. (*Id.*)   Counsel are further informed and do believe that other

22  skillful and experienced litigation attorneys are generally unwilling to undertake civil forfeiture

23  actions on behalf of claimants against the Government on a contingent basis. (*Id.* at par. 22.)

24  To some extent at least, counsel suspects that this is attributable to the perception that the

25  Government possesses insurmountable comparative resources in such matters, and that many

26  attorneys apprehend that they may encounter the very type of aggressive resistance to factual

27  discovery as Claimant's counsel encountered in this case. (*Id.*)

28

13

**10. Time limitations imposed by client or circumstances.**

The imposition of time limitations by the client or by circumstances was not a factor in this case.  (Savarese Declaration at par. 23.)

**11. Experience, reputation, and ability of attorneys.**

The experience, reputation, and ability of the attorneys who successfully represented Mr. Gorman in this matter is summarized *supra*.

**12. Undesirability of the case.**

Counsel submits that this type of litigation is undesirable to many attorneys for the reasons stated *supra* with respect to the perception of the relative strength and resources of the Government in such matters and the difficult prospects of success, particularly if employment is only available on a contingency basis.  (*Id.* at par. 24.)

**13. Nature and length of professional relationship with client.**

This was the first and only time that counsel has ever represented Mr. Gorman.  (*Id.* at par. 25.) But the Court is advised, for what it is worth, that counsel have developed a strong and meaningful professional relationship with Mr. Gorman as a result of their representation of Mr. Gorman in this matter, and that Mr. Gorman has expressed great confidence and faith in the American judicial system as a result of counsel's efforts on his behalf in this matter, and especially as a result of the decision rendered by this Court.  (*Id.*)

**14. Awards in similar cases.**

Counsel is honestly unaware of the amounts of attorney's fees that have been awarded in other similar cases.  (*Id.* at par. 26.)

/ / /

/ / /

/ / /

/ / /

/ / /

### III.

### CONCLUSION

**THEREFORE,** for all the foregoing reasons, Claimant STRAUGHN SAMUEL GORMAN respectfully prays that this Honorable Court grant his claim for an award of attorney's fees in the amount of $148,317, plus an additional $4,685.25 in fees related to the preparation of the instant Motion, together with such further and other relief as the Court deems fair and just in the premises.

DATED this **26th** day of June, 2015.

GENTILE CRISTALLI MILLER
ARMENI & SAVARESE

MICHAEL V. CRISTALLI
Nevada Bar No. 6266
VINCENT SAVARESE III
Nevada Bar No. 2467
410 S. Rampart Blvd., Suite 420
Las Vegas, Nevada  89145
Tel: (702) 880-0000
Attorneys for Claimant, Straughn Samuel Gorman

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on the 26th day of June, 2015, I electronically filed the

3  **CLAIMANT'S STRAUGHN SAMUEL GORMAN'S MOTION FOR ATTORNEY'S**

4  **FEES AND COSTS** with the Clerk of the Court for the United States District Court for the

5  District of Nevada by using the CM/ECF system which will send notification of such filing(s) to

6  the following:

7  greg.addington@usdoj.gov;
   elizabeth.pantner@usdoj.gov; and
8  joanie.silvershield@usdoj.gov

9

10

11                                    /s/Myra Hyde
                                      Myra Hyde An employee of
12                                    GENTILE CRISTALLI MILLER
                                      ARMENI & SAVARESE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28